Chief Judge Fuld.
The principal question posed by this appeal—one of first impression—is whether the Director of the New York City Methadone Maintenance Treatment Program may validly refuse — when so authorized by the Attorney General of the United States and the Secretary of Health, Education and Welfare (HEW) pursuant to federal legislation— to comply with a grand jury subpoena directing him to produce photographs of certain of his patients.
Talmadge Berry was shot and killed in Manhattan on June 7, 1972. A witness to the shooting told the police that she believed she had previously seen the killer in the waiting room of a methadone maintenance treatment clinic (known as Unit Number Two of the Francis Delafield Hospital Methadone Maintenance Treatment Program) where she was also a patient. Some time later, based on this information, a subpoena was •served on Dr. Robert Newman —the Director of the New York *383 City Methadone Maintenance Treatment Program — requiring him to produce photographs of Negro males between the ages of 21 and 35 who were patients at Unit Two of Delafield in 1972, prior to June 7.
A motion was subsequently made to quash the subpoena on the ground that both Federal legislation and New York law— CPLR 4504 (subd. [a]) ■—prohibited production of the photographs. That motion was denied and Dr. Newman was thereafter adjudged to be in contempt of court and sentenced to 30 days in jail. Although the Appellate Division recognized that the refusal of the appellant, Dr. Newman, to obey the subpoena was “ [apparently motivated by the highest ethical canons of the medical profession in respect of confidential relations' with a patient,” it agreed with Special Term that Dr. Newman was guilty of contempt (40 A D 2d 633, 634; 40 A D 2d 672).[1]
In our court, as below, the appellant relies on both New York law (CPLR 4504, subd. [a]) and the Federal legislation enacted in 1970 (Comprehensive Drug Abuse Prevention and Control Act of 1970 [P.L. 91-513; 84 U. S. Stat. 1236]).

Under State Law

Subdivision (a) of CPLR 4504, entitled “ Confidential information privileged ”, provides that, “ Unless the patient waives the privilege, a person authorized to practice medicine * * _* shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” Although it is doubtless true, as the appellant’s affidavit recites, that the photos are ‘ ‘ an absolutely indispensable component of the patient records ’ ’ because they ensure proper identification of the patient and thus avoid administration of methadone to the wrong person, we do not regard them — to employ the words of the statute •—■ as having been ‘[1] acquired in attending a patient in a professional capacity”. Rather, they were obtained by *384 the appellant’s staff during administrative admission procedures. Their true role, therefore, is not to enable the doctor to act in his “ professional capacity ” but to prevent unregistered patients from obtaining methadone and registered patients from obtaining the wrong dosage through administrative errors in identification. Serving solely such a medical management function, they may not be deemed privileged confidential information within the sense of the statute. This conclusion is supported by decisions holding that facts about a patient -¡—which may be plainly observed or easily obtained by a layman — are not privileged. (See, e.g., Klein v. Prudential Ins. Co., 221 N. Y. 449, 453; Edington v. Aetna Life Ins. Co., 77 N. Y. 564, 571; In re Albert Lindley Lee Mem. Hosp., 115 F. Supp. 643, 646, affd. 209 F. 2d 122, cert. den. sub nom. Cincotta v. United States, 347 U. S. 960; see, also, 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4504.08.) Consequently, the appellant may not rely on New York’s physician-patient privilege to justify non-production of the photographs.[2]

Under Federal Law

Dr. Newman, as already indicated, also urges that the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91-513; 84 U. S. Stat. 1236)—hereafter referred to as the 1970 Act — and regulations issued under that Act prevent him from releasing the photographs. The District Attorney, on the other hand, contends that, pursuant to the Drug Abuse Office and Treatment Act of 1972 (P.L. 92-255; 86 U. S. Stat. 65) —hereafter referred to as the 1972 Act — the directors of methadone maintenance programs may be compelled to produce those records upon court order. Therefore, the issue posed upon this appeal is whether the 1972 Act repealed the 1970 Act insofar as the confidentiality of a patient’s record is concerned.
Subdivision (a) of section 3 of the 1970 Act (U. S. Code, tit. 42, § 242a, subd. [a]) and subdivision (c) of section 502 (U. S. *385 Code, tit. 21, § 872, subd. [c]) contain the controlling provisions. The first provided that the Secretary of the Department of Health, Education and Welfare was empowered to authorize persons ‘£ engaged in research on the use and effect of drugs ’ ’ to “protect the privacy of [the research subjects] ” (i.e., the patients) by withholding their “ names or other identifying characteristics ” from anyone not connected with the research program. “ Persons so authorized”, the statute continued, “may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceedings ” to identify the research subjects. The other provision—subdivision (c) of section 502 — granted the same authority to the Attorney General. By March of 1972, however, neither the Secretary of HEW nor the Attorney General had exercised the authority thus given to him.
Be that as it may, in that month, the 1972 Act—which, we note, was born of Congressional recognition that “ [c]ontrol of drug abuse requires the development of a comprehensive, coordinated long-term Federal strategy ’ ’ (U. S. Code, tit. 21, § 1101, subd. [8]) —was enacted. Instead of sanctioning a grant of absolute confidentiality, similar to that provided by the 1970 Act for drug research programs, the 1972 Act authorized disclosure upon court order of the records of patients in a wide variety of drug programs and activities, entitled 1 £ drug abuse prevention functions.”[3] More specifically, subdivision (a) of section 408 (U. S. Code, tit. 21, § 1175, subd. [a]) recited that ‘ ‘ Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function * * * shall be confidential,” subject, however, to disclosure upon authorization by “ a court of competent jurisdiction” after “ application showing good cause therefor ” (suhd. [b], par. [2], cl. [C]).
After the 1972 Act had been enacted, the Secretary of HEW and the Attorney General each exercised his power under the *386 1970 Act to authorize persons “ engaged in [drug] research ” to withhold “ the names [and] other identifying characteristics ” of the research subjects, that is, the patients. Thus, the Secretary of HEW published regulations which provide — with respect to the methadone maintenance treatment programs such as that conducted by the appellant — that “information that would identify the patient will be kept confidential * * * and will not be divulged in any civil, criminal, administrative, legislative, or other proceedings conducted by Federal, State, or local authorities ” (37 Federal Register 6943).[4]
[5]The Attorney General, in a letter to Dr. Newman, dated November 8, 1972, also granted absolute confidentiality to patient records in his New York Methadone Maintenance Treatment Program.[6]
A little more than a week after the Attorney General had granted absolute confidentiality to Dr. Newman’s methadone program, the Special Action Office for Drug Abuse Prevention — established by the 1972 Act to “provide overall planning and policy and establish objectives and priorities for all Federal drug abuse prevention functions ” (U. S. Code, tit. 21, § 1131, subd. [a])—prepared, “in consultation with the Department of Justice and the Department of Health, Education and Welfare, ” an “ interpretative regulation ” to “ deal comprehensively ’ ’ with section 408, the confidentiality provision of the 1972 Act (37 Federal Register 24636). “ If society is to make significant progress in the struggle against drug abuse,” the regulation read, the directors of “ drug abuse treatment programs ’ ’ must be able ‘1 to assure patients and prospective *387 patients of anonymity ”.[6] The regulation also recited that the 1972 Act was not designed to repeal or amend the confidentiality provision of the 1970 Act (37 Federal Register 24639):
‘ ‘ Nothing in either the language or the legislative history of the [1972] Act indicates any intent on the part of Congress to amend the [confidentiality] provisions of the 1970 Act or to reduce the protection which can be afforded under them. * * * the language of section 408 permits * * * a construction which harmonizes with the 1970 Act [and] clearly should not be construed to authorize a court order in derogation of any exercise of the authority of the Secretary of Health, Education, and Welfare * * * or the Attorney General”.
The interpretation of the Special Action Office—that the 1972 confidentiality provision neither “ amend [ed] the [confidentiality] provisions of the 1970 Act ” nor “ reduce [d] the protection afforded under them” (37 Federal Register 24639) —is reasonable and persuasive. The authority in the 1970 Act to grant absolute confidentiality was designed to help ensure the success of drug research programs in which addict participants require anonymity (see, e.g., 1970 U. S. Code Cong. and Admin. News 4594-4595). A similar guarantee of anonymity was not, however, thought to be necessary in the 1972 Act because that statute covered a wide range of programs and activities (“ drug abuse prevention functions ”) in which absolute confidentiality was not regarded as a prerequisite to successful operation of the programs.
For example, the success of a drug abuse education program, or of a job training program for medical aides—which are “ drug abuse prevention functions ” within the terms of the 1972 Act — does not depend upon the participants being assured of complete anonymity. Presumably, no one would refuse to participate in such programs—in contrast with a methadone maintenance program—because his picture might be exhibited *388 to an eyewitness to a crime. The 1972 Act, therefore, permitted the records of program participants in ‘ ‘ drug abuse prevention functions ” to be disclosed ‘ ‘ If authorized by an appropriate order of a court of competent jurisdiction” (U. S. Code, tit. 21, § 1175, subd. [b], par. [2], cl. [C]). That statute did not, however, affect the provision in the 1970 Act for absolute confidentiality in drug research programs.
It is of high significance that the other governmental agencies which, along with the Special Action Office, actually administer, co-ordinaté and implement the 1970 and 1972 Acts have agreed with that agency’s interpretation that the 1972 Act did not repeal or modify the absolute confidentiality provision of the 1970 Act. Not only did the Secretary of HEW—as well as the Attorney General — grant Dr. Newman’s program absolute confidentiality under the 1970 Act after the 1972 Act had been enacted (37 Federal Register 6943; 37 Federal Register 26800) but the Department of Health, Education and Welfare — along with the Special Action Office—filed a brief amicus curiae for the United States of America in support of the appellant’s position.
Indeed, after noting that the Methadone Maintenance Treatment Programs are ‘ ‘ the most important drug addiction research programs presently in existence ’ ’ and that their ‘ ‘ long range success * * * depends on the ability of each program director to promise to each participant, unconditionally, that his participation in the program will not be disclosed,” the authors of the Government’s brief went on to point out that “ the United States Congress has enacted legislation over the last few years to encourage research into [the] causes and cures [of narcotics addiction]. In order to induce those suffering from drug addiction * * * to participate in these research programs, Congress enacted [in 1970] a statute granting absolute confidentiality to such participants, upon proper authorization. # * # [T]his. federal statute is in full force and effect and is fully applicable to Methadone Maintenance Treatment Programs.”
The construction thus given to the legislation by the very agencies charged with its administration, supervision and enforcement is entitled to considerable weight. (See, e.g., Matter of Howard v. Wyman, 28 N Y 2d 434, 438; Lewis v. Martin, 397 U. S. 552, 559; Red Lion Broadcasting Co. v. FCC, 395 U. S. *389 367, 381; Zemel v. Rusk, 381 U. S. 1, 11; cf. Ferraiolo v. O’Dwyer, 302 N. Y. 371, 376; Grimmer v. Tenement House Dept., 204 N. Y. 370, mot. for rearg. den. 205 N. Y. 549, 550.) It is enough to recall, as we wrote in the Howard case (28 N Y 2d, at p. 438), that “ [i] t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.”
Certainly, as noted above, it may not be said that the interpretation accorded the 1972 Act by the Special Action Office as part of a “ comprehensive, coordinated long-term Federal strategy ” against drug abuse was either “irrational” or “unreasonable.” The confidentiality provision of the 1972 Act applies to “ drug abuse prevention functions ” in general, while the absolute confidentiality provision of the 1970 Act applies to drug research programs, such as Dr. Newman’s, where the success of the program depends upon the ability of the director to guarantee each patient that his participation will not be disclosed to anyone not connected with the program.
Our conclusion that the 1972 Act effected no repeal or modification of the 1970 provision is strengthened by the long-standing rule that, unless there is clear evidence of a legislative design to repeal or modify an earlier piece of legislation—and assuredly, no such explicit design is here present — we must, if at all possible, give full effect to both statutes. (See, e.g., People v. Mann, 31 N Y 2d 253, 257-258; Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 141-142; Cimo v. State of New York, 306 N. Y. 143, 148-149; Trade Comm. v. A. P. W. Paper Co., 328 U. S. 193, 202; United States v. Borden Co., 308 U. S. 188, 198-199.)[7] “ [I]t is familiar learning ”, the court *390 stated in the Allen case (Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 141-142, supra), “ that repeals by implication are not favored by the courts. Generally speaking, a statute is not deemed to repeal an earlier one without express words of repeal, unless the two are. in such conflict that both cannot be given effect. If by any fair construction, a reasonable field of operation can be found for two statutes, that construction should be adopted ”. Quite obviously, there are no express words of repeal in the 1972 Act, and it is equally clear that the two statutes are not in such conflict that both may not be given effect. Since, therefore, Dr. Newman may not be compelled to produce the photographs, he may not be held in contempt.
The order appealed from should be reversed, the adjudication of contempt vacated, and the motion to quash the subpoena granted.

. The Appellate Division modified Special Term’s order by adding to the subpoena “ appropriate safeguards against unnecessary disclosure ”: the witness to the homicide was to “ view the photos under supervision of [Dr. Newman] or someone designated by him” and none of the pictures other than the one identified by the witness were to be exhibited to the police or prosecutor (40 A D 2d 633, 634).

. In the view which we have taken on this aspect of the ease, it is unnecessary to consider whether title VI (Public Health Law, § 3370 et seq.) of the recently enacted New York State Controlled Substances Act (Public Health Law, art. 33) would also preclude the photos from being “ deemed confidential within the meaning of the civil practice law and rules” (Public Health Law, § 3373).

. Subdivision (b) of section 103 of the 1972 Act (U. S. Code, tit. 21, § 1103, subd. [b]) defined “drug abuse prevention function” as “any program or activity relating to drug abuse education, training, treatment, rehabilitation, or research, and includes any such function even when performed by an organization whose primary mission is * unrelated to drugs.”

. The regulation — entitled “ Methadone: Proposed Special Requirements for Use” — was first published in the Federal Register on April 6, 1972 — prior, we note, to the issuance of the subpoena in this ease — and was promulgated by the Commissioner of Food and Drugs, pursuant to the authority vested in him by the Secretary of HEW (37 Federal Register 6940). It was published in final form on December 15, 1972, and became effective on that date (37 Federal Register 26790, 26800, 26806).

. The letter read in this way: “I hereby authorize you to withhold the names and other identifying characters of persons who are the subjects of research conducted pursuant to and in conformity with this research project. You may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceeding to identify the subjects of such research.”

. To support his contention that the 1972 Act effected a repeal of the provision authorizing absolute confidentiality to drug research programs by the 1970 Act, the respondent District Attorney points to statements of individual members of Congress made during its debate on the 1972 Act. Such reliance is misplaced. It has long been established that, since such statements tend to show the thinking of a few legislators rather than the intent of Congress as a whole, they “are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the law-making body.” (Duplex Co. v. Deering, 254 U. S. 443, 474; see, e.g., Zuber v. Allen, 396 U. S. 168, 186; United States v. Freight Assn., 166 U. S. 290, 318-319; 2 Sutherland, Statutes and Statutory Construction [3d ed.], § 5011; see, also, with respect to New York Legislature, Matter of Morse [Bank of Amer.], 247 N. Y. 290, 302-303; Woollcott v. Shubert, 217 N. Y. 212, 221.)