QUESTION: Does the Comprehensive Alcohol and Narcotic Rehabilitation Act, or any other authority, under which "DACCO" operates allow its administrator or employees to refuse to furnish information as to the whereabouts of a federal fugitive when requested by a statutory law enforcement officer?
SUMMARY: Pursuant to applicable federal law, directors of drug treatment facilities which are subject to federal regulations, should not disclose patients' names, addresses, or whereabouts to anyone in the absence of an order compelling such disclosure issued by a court of competent jurisdiction. According to your letter, you have received information indicating that a federal fugitive charged with probation violation was receiving methadone at a drug treatment facility known as "DACCO" in Tampa. A deputy United States marshal attempted to secure information regarding the patient's home address, date and time of appearance for treatment, and the name of the state probation officer who supervised said patient. The director of DACCO refused to furnish the information on the ground that all information regarding individuals receiving drug treatment is confidential and may be released only with the consent of the individual receiving treatment. This denial has prompted your inquiry to this office. Production of Information Under Controlling Federal Law In 1970, Congress enacted the Comprehensive Drug Abuse Prevention Control Act, 21 U.S.C. ss. 901-966. This act recognized the need for confidentiality in the area of drug research and, accordingly, empowered the Secretary of the Department of Health, Education and Welfare, 42 U.S.C. § 242a(a)(2), and the Attorney General,21 U.S.C. § 872(c), to . . . authorize persons engaged in research on the use and effect of drugs to protect the privacy of individuals who are the subjects of such research by withholding from all persons not connected with the conduct of such research the names or other identifying characteristics of such individuals. . . . (Emphasis supplied.) Persons so authorized may not be compelled in any federal, state, or local civil, criminal, administrative, legislative, or other proceeding to identify research subjects, i.e., drug treatment patients. [See]42 U.S.C. § 242a(a)(2). Two years later Congress enacted the Drug Abuse Treatment Act of 1972, 21 U.S.C. ss. 1101-91 (Supp. II, 1972) and established the Special Action Office for Drug Abuse Prevention (hereafter SAODAP) in order to coordinate federal efforts and resources in the fight against drug abuse. This act, which applies only to programs conducted in whole or part by a department, agency, or instrumentality of the United States or which are dependent in whole or part on a federal license or authorization, states at 21 U.S.C. § 1175(a) that: "Records of identity, diagnosis, prognosis or treatment of any patient. . . shall be confidential." [It might be noted that SAODAP's interpretative regulations have been revised to include all drug abuse prevention functions which are federally supported. [See] 21 C.F.R. s. 1401.01(d) (1973). The regulations now also include communications and information in addition to records. [See] 21 C.F.R. s. 1401.01(h), 38 Fed. Reg. 33444, n. 3.] In this regard it should be noted that while the 1970 provision allows the Secretary of Health, Education, and Welfare and the Attorney General to authorize program personnel to withhold records, the above provision, within certain limitations, requires nondisclosure. The penalty for noncompliance with the mandate of 21 U.S.C. § 1175(a) is a fine of five hundred dollars for the first offense and not more than five thousand dollars for each subsequent offense. [See] 21 U.S.C. § 1175 (e). Moreover, the Secretary of the Department of Health, Education, and Welfare has delegated to the Commissioner of Food and Drugs the authority to safeguard records of "research subjects." See 37 Fed. Reg. 6940 (Dec. 15, 1972). As part of an extensive regulation governing the use of the drug methadone, the commissioner has authorized all methadone treatment programs to withhold records of patients. [See] 21 C.F.R. § 130.44(g) (1973). Also see 37 Fed. Reg. 24639. Regulations of the Food and Drug Commission point out that methadone programs — like all drug abuse prevention functions — have a duty not to disclose patient records under 21 U.S.C. § 1175(a) and SAODAP's interpretative regulations. The commissioner has authorized program personnel to withhold the identity of patients even in the face of a subpoena or other court order. [See] 21 C.F.R. § 130.44(g)(2) (1973). See also Confidentiality of Narcotic Treatment Records, 73 Colum. L.F. 1579, 1606-1607 (Dec. 1973). However, while SAODAP's regulations, relying on the 1970 act, authorize absolute nondisclosure, the 1972 act contains a provision noticeably absent from the 1970 act. Title 21 U.S.C. § 1175(a)(2)(c) provides that if a patient does not give his written consent for disclosure of records of identity and treatment, the content of such records may be disclosed if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause. In assessing good cause, the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure. The apparent conflict between the nondisclosure provisions of the 1970 act and the disclosure authorized by court order under the 1972 act was considered in People v. Newman, 298 N.E.2d 651 (N Y 1973), in which the court of appeals held, in a 4-3 decision, that the appellant's methadone patients' records were granted "absolute confidentiality" by the Food and Drug regulations previously discussed and a special letter from the Attorney General which likewise authorized nondisclosure under 21 U.S.C. § 872(c). Newman at 655. The district attorney contended that the 1972 act effected a modification of the 1970 act to the extent that it authorized a court of competent jurisdiction to compel disclosure of identifying records upon a showing of good cause. Newman at 653. Judge Field held, however, that the restrictive confidentiality provisions of the 1970 act were still in effect, unamended by the 1972 act. In dissent, Judge Breitel rejected the administrative regulations which attempted to reconcile the two acts and stated: The effect by the statute is to place in the court the sole power to disclose a patient's record after placing the interests involved. . . . It does not give any primary or secondary role in the disclosure to the program officials or to supervisory administrators. Despite the majority's position in Newman, the legislative history of 21 U.S.C. § 1175 unequivocally states that: Every person having control over or access to patients' records must understand that disclosure is permitted only under the circumstances and conditions set forth in this section. Records are not to be made available to investigators for the purpose of law enforcement or for any other private or public purpose or in any manner not specified in this section. 1972 U.S. Code Cong. Ad. News at 2072. (Emphasis supplied.) Such an intent is clearly manifest at 21 U.S.C. § 1175(c) which provides: Except as authorized by a court order granted under subsection (b)(2)(c) of the Section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient. (Emphasis supplied.) Additionally, in 1974, Congress amended s. 1175 and provided that the director of SAODAP shall prescribe regulations to carry out the provisions of this section. See Pub.L. 93-282, Title III, s. 408(g) (88 Stat. 137). These regulations, which have not as of this date been promulgated, see proposed rules at 39 Fed. Reg. 30426, may contain such definitions and provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(c), as in the judgment of the director are necessary or proper to effectuate the purposes of this section to prevent circumvention, evasion or facilitate compliance. In regard to s. 1175 regulations under the 1972 act, Pub.L. 93- 282 states at Title III, s. 408(d) that: Any regulation under or with respect to section 408 of the Drug Abuse Office and Treatment Act of 1972 (21 U.S.C. § 1175) issued by the Director of the Special Action Office for Drug Abuse Prevention prior to the date specified in section 104 of the Act (21 U.S.C. § 1104), whether before or after the enactment of the Act, shall remain in effect until revoked or amended by the Director or the Secretary of Health, Education and Welfare, as the case may be. (Emphasis supplied.) Thus, the conflict between the 1972 act, the 1970 act, and their respective interpretative regulations promulgated by various federal agencies is apparent. The 1972 amendment to the 1970 act has done little to clarify the question concerning exactly what the lawful confidentiality parameters of patient records in fact are. On one hand, the DACCO director, pursuant to the 1970 act and federal regulations which have arguably been approved by Congress in Pub.L. 93-282, must withhold the records which you request, even in the face of a warrant or court order. On the other hand, law enforcement officials, under the plain terms of the 1972 and 1974 amendments, may petition a court of competent jurisdiction to authorize the disclosure of identity and treatment records which may be authorized upon a showing of "good cause." Since the issue involves conflicting federal statutes and apparently ambiguous regulations promulgated by federal agencies, I am of the view that the matter should be presented to a court of competent jurisdiction for ultimate determination. Whether the courts of this state would follow the majority or minority position in Newman would be a matter of pure conjecture. However, until a court adopts the minority position in Newman and orders disclosure of identifying records, I could not, in good conscience, advise a drug abuse director who had possession of such patient records to disclose them to anyone in the absence of a court order. I am compelled to this view primarily on the basis of the presumptively valid federal regulations already discussed which have been recognized and at least tacitly approved by Congress, Pub.L.93-282, the Newman decision, and the penalty provisions associated with unauthorized disclosure of patient records. In so advising the drug abuse director, I am not unmindful of 18 U.S.C. § 1071, which makes harboring and concealing any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States a federal crime. Federal courts have held, however, that failure to disclose information regarding the whereabouts of a federal fugitive is not the type of assistance contemplated by "harbor and conceal" as used within the statute. United States v. Foy, 416 F.2d 940 (7th Cir. 1969); United States v. Magness, 456 F.2d 976 (9th Cir. 1972); also see State v. Walker, 218 N.W.2d 599 (Iowa 1974). While the Court of Appeals for the Fifth Circuit has not yet decided the issue of whether the failure to truthfully answer a law enforcement officer's questions regarding a federal fugitive constitutes "concealing" pursuant to18 U.S.C. § 1071, see United States v. Deaton, 468 F.2d 541 (5th Cir. 1972), I am of the opinion that the mere nondisclosure of an individual's name and address without any overt act would, in all probability, not give rise to a violation of 18 U.S.C. § 1071. Therefore, in order to attempt to secure the information which you feel you need to effectively perform your duty as a United States marshal, the advisable course is to follow the procedure for involuntary disclosure of patient records outlined within the latest act of Congress, Pub.L. 93-282.