Abraham J. Gellinoff, J.
On the evening of June 7, 1975, one Isidore Morah was slain, apparently during the commission of a robbery, in a Manhattan hotel room. The New York City Police Department commenced an investigation.
On July 22, 1975, a patient at Queensboro Rehabilitation Center, a New York State Drug Abuse Control Commission facility, had a conversation with petitioner Barbara Anastasi, a narcotic parole officer. The patient, whom petitioners refer to as Jane Doe (see Rules of Department of Health, Education and Welfare, tit 42, ch 1, subch A, pt 2, § 2.64, [40 Fed Reg 27820]) made statements to Ms. Anastasi as to her involvement in the Morah murder. At Ms. Anastasi’s request, she repeated those statements before other parole officers, the copetitioners here, and then, at Jane Doe’s specific request, petitioners notified the police of their conversation with Jane Doe.
A homicide detective responded to petitioners’ call and briefly questioned Jane Doe in petitioners’ presence. Subsequently, after being taken to the station house, and again, later, before an Assistant District Attorney, Jane Doe fully confessed her complicity in the murder with another, naming the actual killer.
Two days later, the police met again with petitioners, and discussed what Jane Doe had told each of them about the crime. Thereafter, Jane Doe, her father and her lawyer met with an Assistant District Attorney, and it was then agreed that Jane Doe would testify before the Grand Jury, would cooperate in the prosecution of the actual killer, and would be permitted to plead guilty to a lesser charge.
Three days later, Jane Doe’s attorney informed the Assistant District Attorney that petitioners told him that Jane Doe had exculpated herself in her first conversation with them, and that therefore he was unwilling to abide by the arrangement previously agreed upon. The Assistant District Attorney thereupon spoke to Ms. Anastasi, who confirmed the attorney’s statement. The prosecutor then issued subpoenas to petitioners to testify before the Grand Jury as to the statements Jane Doe had first made to them.
In the application now before the court, petitioners, relying upon the Drug Abuse Office and Treatment Act of 1972 (US *168 Code, tit 21, §§ 1101 et seq.) specifically section 1175 thereof and the regulations promulgated thereunder, move to quash the subpoenas on the ground that the information sought to be obtained through their testimony is privileged and confidential.
Subdivision (a) of the statute provides, in relevant part, that: "Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall * * * be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.”
Subdivision (b), as here relevant, permits disclosure of these records under the following circumstances:
"(1) The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.
(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows: * * *
(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor.” The regulations promulgated pursuant to the statute define "records” as including "any information, whether recorded or not, relating to a patient, received or acquired in connection with the performance of any alcohol abuse or drug abuse prevention function” (Rules of Department of Health, Education and Welfare, tit 42, ch 1, subch A, pt 2, § 2.11, subd (o) [40 Fed Reg 27805]).
The inforjnation which the prosecutor seeks to obtain from petitioners through their Grand Jury testimony does not constitute "records of the identity, diagnosis, prognosis, or treatment” of Jane Doe, and is therefore not classified by the statute as "confidential”.
In their papers submitted on this application, petitioners *169 treat the privilege afforded by section 1175 of title 21 of the United States Code as though it encompassed any communication between a patient and an employee of a drug program. The statute, however, does not so provide. To prohibit its disclosure, the record, either written or oral, must pertain to the patient’s "identity, diagnosis, prognosis, or treatment.” The privilege does not extend to the gratuitous confession of criminal activity, which, as here, is unrelated to "identity, diagnosis, prognosis, or treatment”.
Indeed, petitioners themselves obviously recognized that Jane Doe’s statement to them was not within the scope of the statutory privilege, since, immediately following her statement, they promptly, without her written consent, notified the police, and disclosed her statement to the police, to her attorney and to the prosecutor.
Thus, petitioners’ reliance here upon People v Newman (32 NY2d 379), is misplaced. In Newman, the prosecutor sought to obtain photographs of patients at a drug program in order that a witness might thereby identify a murderer. The disclosure of such photographs would obviously entail the revelation of the identity of patients in the program, and comes within the purview of the statute. Here, by contrast, there is no question of Jane Doe’s identity, or of her status as a patient, for petitioners, and Jane Doe herself, have repeatedly revealed and discussed it with the police and prosecutors.
Accordingly, the information here sought to be elicited is not "confidential”, and must be disclosed by petitioners to the Grand Jury.
But even if the language of the statute were susceptible of being strained so as to extend the privilege to the information sought here, such privilege has been waived by Jane Doe. The initial disclosure of her statement by petitioners was made at her express request. She then repeated her statement to the authorities, and discussed her statement to petitioners with them. By her actions, Jane Doe has conclusively demonstrated that her revelations to petitioners were not considered by her to be confidential. She has therefore waived her right to confidentiality, both pursuant to section 1175 of title 21 of the United States Code (see People v Still, 48 AD2d 366), and pursuant to State law (see CPLR 4504).
Finally, the District Attorney requests that his answering papers be deemed an application for an order pursuant to section 1175 (subd [b], par [2], cl [C]) of title 21 of the United *170 States Code. While the court concludes that the facts here would ordinarily warrant the issuance of such an order based on the criteria provided in the statute and regulations, the regulations also provide that: "the scope of an order issued pursuant to this subpart may not extend to communications by a patient to personnel of the program, but shall be limited to the facts or dates of enrollment, discharge, attendance, medication, and similar objective data” (Rules of Department of Health, Education and Welfare, tit 42, ch 1, subch A, pt 2, § 2.63 subd [a] [40 Fed Reg 27819]). Under the circumstances, however, it is unnecessary for the court to pass upon the validity of this regulation. Suffice that no order permitting disclosure under the statute is here necessary.
In sum, the purpose of the statute and regulations that pertain to confidentiality is to protect an addict undergoing treatment from public revelation of his addiction and the details of his treatment. That purpose would be ill-served by extension of the ban on disclosure to the facts here. Moreover, the suppression of the statement made by Jane Doe, a truly voluntary statement made without desire for confidentiality, would be unjust to the prosecutorial function. For, "justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true” (Snyder v Massachusetts, 291 US 97, 122).
The application to quash the subpoenas is denied. Petitioners are directed to appear before the Grand Jury and to respond to questions as to the statements made to them by Jane Doe.