71 N.Y.2d 186 (1988)
In the Matter of Consolidated Edison Company of New York, Inc., Respondent,
v.
Department of Environmental Conservation et al., Appellants.
Court of Appeals of the State of New York.
Argued November 13, 1987.
Decided January 7, 1988.
Robert Abrams, Attorney-General (Ezra I. Bialik, O. Peter Sherwood, Peter H. Schiff and Peter G. Crary of counsel), for appellants.
Brent L. Brandenburg and Sara Schoenwetter for respondent.
Davison W. Grant for Central Hudson Gas & Electric Corporation and others, amici curiae.
Chief Judge WACHTLER and Judges SIMONS, KAYE and ALEXANDER concur with Judge TITONE; Judge BELLACOSA concurs in result in a separate opinion; Judge HANCOCK, JR., taking no part.
*189 TITONE, J.
The issue presented on this appeal is whether the broad power of the Department of Environmental Conservation (DEC) and the Commissioner of Environmental Conservation (Commissioner) to regulate the bulk storage of petroleum was superseded by the Oil Spill Prevention, Control and Compensation Act of 1977 and the 1983 Control of the Bulk Storage of Petroleum Act. We hold that the 1977 and 1983 Acts did not revoke DEC's otherwise broad power to regulate the bulk storage of petroleum. Consequently, DEC acted within its statutory authority in promulgating a new bulk petroleum storage code.
In an effort to protect the environment from oil pollution, the Legislature enacted the Oil Spill Prevention, Control and Compensation Act of 1977 (L 1977, ch 845, § 2, codified at Navigation Law § 170 et seq.) (1977 Act) aimed at controlling the storage and transfer of petroleum. The 1977 Act expressly applied to only major petroleum bulk storage facilities[1] and empowered DEC to promulgate regulations governing cleanup and removal of impermissible petroleum discharges. The Act also required major facilities to comply with the EPA's Federal Spill Prevention, Control and Countermeasure Plans (SPCC Plans) (see, Navigation Law § 176 [4]; 33 USC § 1251 et seq.; 40 CFR part 112; 6 NYCRR 610.4 [a] [4] [i]). Pursuant to the SPCC Plans, major facility owners and operators must develop plans for the prevention and control of spills and leaks that are specifically tailored to the particular facility as well as detailed regulations governing the cleanup and removal of petroleum pollution. In 1978, DEC promulgated regulations pursuant to the 1977 Act that required major facilities to comply with Federal standards in order to receive an operating license (see, Navigation Law §§ 174, 176; 6 NYCRR part 610).
The Legislature subsequently recognized that a serious regulatory gap existed, since smaller storage facilities, a significant source of petroleum pollution, were not subject to any regulation. In response to this problem, the 1983 Control of the Bulk Storage of Petroleum Act (L 1983, ch 613, codified at ECL 17-1001 et seq.) (1983 Act) was passed. The 1983 Act applied only *190 to new or substantially modified nonmajor facilities.[2] It directed DEC to promulgate a State petroleum bulk storage code aimed at the prevention of petroleum discharge as well as the containment, cleanup and removal of petroleum pollution (see, ECL 17-1001, 17-1005, 17-1007, 17-1009, 17-1015). However, the 1983 Act expressly exempted major facilities and preexisting nonmajor facilities from the requirements of the new bulk storage code.
In 1984, DEC promulgated a petroleum bulk storage code (the Code) that required petroleum storage facilities to meet certain State-wide minimum standards and addressed leak detection, corrective action, registration and access to records and facilities. Most importantly, despite the specific exemptions contained in the 1983 Act, the Code applied to preexisting nonmajor facilities, as well as those that were new or substantially modified (see, 6 NYCRR parts 612-614). Further, DEC also amended the regulations adopted pursuant to the 1977 Act (6 NYCRR part 610) to require all major facilities to comply with the Code, even though these facilities were already subject to Federal SPCC Plans under the 1977 Act (see, 6 NYCRR 610.4 [a] [4] [vi]; 610.5 [a] [4]; [d] [4], [7]). DEC relied on its general regulatory power over major facilities (see, Navigation Law § 191) and its general regulatory power to prevent liquid pollution (see, ECL 3-0301 [1] [m]; 3-0303 [3]) as its authority for subjecting these facilities, exempt under the 1983 Act, to coverage under the Code. Respondent, Commissioner of the Department of Environmental Conservation, approved the Code on November 27, 1985.
Petitioner Consolidated Edison Company of New York, Inc. (Con Edison) is a utility company engaged in the production, distribution and sale of electric energy and steam to over 2,700,000 customers in New York City and Westchester County. It maintains both major and nonmajor petroleum bulk storage facilities in the State in order to fuel its electric generating and steam sendout facilities. Con Edison commenced this article 78 proceeding seeking to annul those portions of the Code that required major facilities and nonmajor facilities that are not new or substantially modified to comply with the new regulations. The Supreme Court granted *191 the petition, concluding that the 1977 and 1983 Acts superseded any other authority DEC may have had to regulate those major facilities subject to the 1977 Act and those nonmajor, preexisting facilities that were exempt from coverage under the 1983 Act. The Appellate Division affirmed, without opinion. We now reverse.
An administrative agency possesses all the powers expressly delegated to it by the Legislature and such a delegation of authority will be upheld so long as the Legislature has "limit[ed] the field in which that discretion is to operate and provides standards to govern its exercise" (Matter of Levine v Whalen, 39 N.Y.2d 510, 515; accord, Matter of City of New York v State of New York Commn. on Cable Tel., 47 N.Y.2d 89, 92; Matter of City of Utica v Water Pollution Control Bd., 5 N.Y.2d 164, 168-169). However, it is not always necessary that the Legislature provide precise guidelines to an agency charged with carrying out the policies embodied in a legislative delegation of power. In certain technical areas, where flexibility is required to enable an administrative agency to adapt to changing conditions, it is sufficient if the Legislature confers broad power upon the agency to fulfill the policy goals embodied in the statute, leaving it up to the agency itself to promulgate the necessary regulatory details (Matter of City of Utica, supra, at 169). The Legislature need only furnish an agency standards or guides "in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules" (Matter of Levine v Whalen, supra, at 515).
There are limits, of course, on what an agency may do even when it operates under a valid grant of authority from the Legislature. As we recently held in Matter of Boreali v Axelrod (71 N.Y.2d 1, 6), "the scope of [an agency's] authority under its enabling statute must be deemed limited by its role as an administrative, rather than a legislative, body." In Boreali we held that, under the separation of powers doctrine, the Public Health Council went beyond its lawfully delegated authority when it promulgated comprehensive regulations governing tobacco smoking in areas open to the public. We determined that the Council had usurped the role of the Legislature when, rather than employing its public health expertise in making technical determinations so as to implement legislative policies, the Council engaged in a balancing of political, *192 social and economic factors and drew up a "code embodying its own assessment of what public policy ought to be" (supra, at 9).
However, this case poses an entirely different question. The issue before us is not whether DEC and the Commissioner have strayed from the administrative into the legislative field. Indeed, it appears that the regulations at issue are well within the traditional agency role of applying technical expertise to implement legislative goals in situations too complex and detailed to be dealt with individually by the Legislature. Our concern is not with the nature of DEC's actions as legislative or administrative, but whether the Legislature, by the 1977 and 1983 Acts, intended to limit its previous grant of broad regulatory powers to DEC so as to leave DEC without authority to promulgate the petroleum storage regulations now at issue.
The Environmental Conservation Law was enacted to protect the quality of our environment by controlling "water, land and air pollution, in order to enhance the health, safety and welfare of the people of the state" (ECL 1-0101 [1]; see also, ECL 17-0101 [public policy of the State is "to maintain reasonable standards of purity of the waters of the state consistent with public health and public enjoyment thereof"]). Consistent with this declaration of legislative policy, ECL 3-0301 (1) (m) empowered DEC and the Commissioner to "[p]revent pollution through the regulation of the storage, handling and transport of solids, liquids and gases which may cause or contribute to pollution". A similar broad grant of authority is found in ECL 17-0303 (2), which provides that DEC "shall have administrative jurisdiction to abate and prevent the pollution of" State waters. More specifically, ECL 17-0303 (3) permits DEC to: "make, amend and repeal rules and regulations for the storage of liquids likely to pollute the waters of the state including, but not limited to, standards for the construction, installation, maintenance, protection and diking of tanks used to store any such liquids and their associated structures, piping, valves, fittings, fixtures and outlets, in conjunction with the promulgation of which, the commissioner shall consider codes and practices of industries concerned with the handling and storage of such liquids and the time required for persons engaged in such industries to conform with such rules and regulations." These statutes empower DEC to regulate *193 the storage of petroleum and other liquids, regardless of the type of facility involved.[3]
These are unquestionably legitimate goals of the State and the Legislature has set forth the power of DEC with sufficient specificity, given the complexities involved in preventing and abating water pollution (Matter of City of Utica v Water Pollution Control Bd., 5 NY2d, supra, at 170-171). Since it is undisputed that petroleum is a liquid that is likely to pollute State waters, DEC was acting within the permissible ambit of its delegated authority under the Environmental Conservation Law in promulgating regulations governing the bulk storage of petroleum in a wide range of facilities, unless that power had been revoked by the 1977 and 1983 Acts.
As we noted in Matter of Boreali v Axelrod (supra, at 14-15), the mere fact that the Legislature has enacted specific legislation in a particular field does not necessarily lead to the conclusion that broader agency regulation of the same field is foreclosed. The key question in all cases is what did the Legislature intend?
There is nothing contained in the 1977 or 1983 Acts that evinces a legislative intent to narrow DEC's broad grant of authority to promulgate regulations that will prevent petroleum pollution. In addition, the 1977 Act, the 1983 Act and the Code "have a common underlying policy objective"  namely, preventing environmental pollution caused by the discharge of petroleum. Indeed, the 1977 Act is actually a source of DEC's regulatory authority over major facilities.
Among the goals of the 1977 Act was the control of petroleum storage within the State (Navigation Law § 170) in order "to ensure a clean environment * * * by preventing the unregulated discharge of petroleum * * * by authorizing [DEC] to respond quickly to such discharges and effect prompt cleanup and removal" (Navigation Law § 171). Con Edison construes this enabling legislation as limiting DEC's regulatory power over major facilities to the cleanup, containment *194 and removal of petroleum pollution only and not to the storage or prevention phases of bulk petroleum storage. However, we conclude that such a restrictive reading is unwarranted in light of other provisions contained in the 1977 Act.
The 1977 Act also provides that: "As a condition precedent to the issuance or renewal of a license [DEC] shall require satisfactory evidence that the applicant has implemented or is in the process of implementing state and federal plans and regulations for control of discharges of petroleum, and the containment and removal thereof when a discharge occurs." (Navigation Law § 174 [3] [emphasis added].) This provision expressly requires that an owner or operator must satisfy State, as well as Federal, standards regarding both the control and prevention of petroleum pollution and the cleanup of impermissible discharges. The reasonable implication of this provision is that the Legislature intended to leave the door open for future State regulation over petroleum pollution prevention, not only pollution cleanup, as Con Edison posits.
Further, under the 1977 Act, the Legislature conferred upon the Commissioner the power to adopt such regulations as he deems "necessary to accomplish the purposes" of the Act (Navigation Law § 191). The stated policy goals of the 1977 Act  to ensure a clean environment by preventing unregulated petroleum discharges  could hardly be accomplished if the agency charged with fulfilling these goals was without power to regulate the prevention of petroleum pollution. Such a regulatory authority would appear to be a power "required by necessary implication" (Matter of City of New York v State of New York Commn. on Cable Tel., 47 N.Y.2d 89, 92, supra; Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 N.Y.2d 471). Thus, we conclude that the Commissioner did have the power to regulate major facilities. This power is derived from the 1977 Act itself and from DEC's general grants of authority to regulate liquid pollution (ECL 3-0301 [1] [m]; 17-0303 [3]) which were neither expressly nor impliedly repealed by the 1977 Act (see, Alweis v Evans, 69 N.Y.2d 199).
Con Edison also contends that since the 1983 Act expressly exempted major facilities and preexisting nonmajor facilities from coverage under the Code, it effectively repealed DEC's broad power to regulate the storage of bulk petroleum. However, there was no express modification of DEC's broad regulatory powers contained in the Environmental Conservation *195 Law or the 1977 Act. Although the 1983 Act provided that the Code "shall not include" major facilities covered by the 1977 Act or preexisting nonmajor facilities (ECL 17-1001, 17-1003 [1]), it did not expressly repeal or modify DEC's power to regulate. Indeed, such statutory language is entirely consistent with the position taken by DEC and the Commissioner that the Legislature sought to direct the agency to address a specific problem area that had not previously been regulated, rather than to effect a modification or repeal of DEC's power. This view is further supported by the legislative history, which indicates that a serious leakage problem in smaller storage facilities was the main justification behind the 1983 Act (see, L 1983, ch 613, Bill Jacket, Legis Mem, at 0009).[4]
Repeal or modification of legislation by implication is not favored in the law. Absent an express manifestation of intent by the Legislature  either in the statute or the legislative history  the courts should not presume that the Legislature has modified an earlier statutory grant of power to an agency (Alweis v Evans, 69 N.Y.2d 199, 204, supra; People v Newman, 32 N.Y.2d 379, 389-390, cert denied 414 US 1163). Generally, a statute is not deemed impliedly modified by a later enactment "`unless the two are in such conflict that both cannot be given effect. If by any fair construction, a reasonable field of operation can be found for [both] statutes, that construction should be adopted'" (People v Newman, 32 N.Y.2d 379, 390, cert denied 414 US 1163, supra; see also, Alweis v Evans, supra, at 204; Ball v State of New York, 41 N.Y.2d 617, 622; Matter of Board of Educ. v Allen, 6 N.Y.2d 127, 141-142; Cimo v State of New York, 306 N.Y. 143, 148-149; Peterson v Martino, 210 N.Y. 412, 418; McKinney's Cons Laws of NY, Book 1, Statutes § 391). "These principles apply with particular force to statutes relating to the same subject matter, which must be read together and applied harmoniously and consistently" (Alweis v Evans, supra, at 204; Matter of Guardian Life Ins. Co. v Chapman, 302 N.Y. 226, 231).
*196 The statutes at issue on this appeal do not conflict in any way. The 1983 Act confers on DEC the power to promulgate regulations governing new and substantially modified nonmajor facilities. The 1977 Act empowers DEC to regulate major facilities in the State. ECL 3-0301 (1) (m) and 17-0303 (3) permit the agency to regulate in those areas of bulk petroleum storage where the other legislation has left a gap. All of the applicable statutory provisions can operate in harmony without interfering or conflicting with each other in any way. Under such circumstances, it cannot be said that the 1983 Act impliedly repealed DEC's broad regulatory authority over petroleum storage. Since DEC's power has not been shown to be either expressly or impliedly repealed, we find that DEC and the Commissioner were acting within their statutory authority in promulgating the Code.
The order of the Appellate Division should be reversed, with costs, and the petition dismissed.
BELLACOSA, J. (concurring).
I concur only in the result. Proper statutory construction and appropriate administrative implementation of legislatively delegated authority to the Department of Environmental Conservation (DEC) support reversal. I cannot ascribe, however, to the effort in the majority opinion to distinguish Boreali v Axelrod (71 N.Y.2d 1).
An analytical and precedential inconsistency with Boreali emerges from the assertion in this case that the broad power delegated to "experts" to regulate the bulk storage of petroleum is valid and survives two foursquare legislative constricting amendments. Moreover, the asserted distinction that DEC possesses expertise in the oil spill/fuel storage area but that the Public Health Council (PHC) lacked parallel public health expertise concerning the health and life threat from smoking is at the very least questionable.
Nor can Boreali be so easily sidestepped on the ground that there the delegated regulatory authority for the PHC to protect the public health was held to have been overbroadly exercised as contrasted to here where a similarly broad grant of regulatory authority to DEC is held not to have been narrowed by specific subsequent legislation. In Boreali, the analogously delegated regulatory power, which had never been narrowed or preempted during its 75-year history and had additionally enjoyed the universal approbation of this court, was found overbroadly exercised and violative of the separation of powers doctrine, the key distinction emphasized *197 by the majority. Of course, the separation doctrine is not raised or directly involved in the instant case, but that facile categorical distinction is not decisive.
The result in the instant case runs counter to the multipronged rationale of Boreali. Ironically, this court used failed legislative efforts to effect a smoking ban as a decisive weight in countermanding an existing statute in Boreali. Conversely in this case, two direct and successful legislative amendments are construed, not without some difficulty, to maintain the subject regulations. In sum, the majority differentiates the two cases as resting on the intent of the Legislature.
I believe, however, that the court sows confusion when it reaches sharply opposing results in proximately decided cases, in one of which failed legislative efforts are decisive and in the other of which relevant enactments are swept aside. While the desire to avoid Boreali simply on separation of powers versus statutory construction grounds may be understandable, such a neat categorization fails to come to grips with the interwoven analytical thrust of Boreali. Because problems concerning the delegation of administrative law authority will persist, I concur in the result only.
Order reversed, etc.
NOTES
[1] Major petroleum bulk storage facilities are defined as "[f]acilities with total combined above-ground or buried storage capacity of" at least 400,000 gallons (Navigation Law § 172 [11]).
[2] Under the 1983 Act, a nonmajor facility is defined as one in which over 1,100 gallons of petroleum are stored at the same site, but expressly excludes major facilities licensed under the 1977 Act  i.e., those facilities that store 400,000 or more gallons of petroleum (ECL 17-1003 [1]).
[3] We cannot agree with the concurrence that in Boreali the court reached a "sharply opposing" result. Here, the Legislature delegated authority to DEC to abate and prevent water pollution and set out guidelines for the agency as to how that might be accomplished, including particularly guidelines with respect to regulations "for the storage of liquids likely to pollute the waters of the state" (ECL 17-0303 [3]). By contrast, in Boreali there was no similar legislation authorizing the Public Health Council to regulate smoking in public places. The Public Health Council was therefore left to make policy choices which are appropriately for the Legislature.
[4] To support its position that the Legislature intended to modify DEC's power, Con Edison points to a November 27, 1985 letter from Senator John R. Dunne, the Senate sponsor of the 1983 Act, to DEC, which stated that "[i]t was not the intent of the Legislature that the Code regulate facilities already covered under" the 1977 Act. This letter was prepared some two years after the 1983 Act was passed and such postenactment history, even by a bill's sponsor, is not a reliable indication of what the legislative body as a whole intended (Zuber v Allen, 396 US 168, 186; Duplex Co. v Deering, 254 US 443, 474; People v Newman, 32 N.Y.2d 379, 389, n 7, cert denied 414 US 1163; Matter of Delmar Box Co. [Aetna Ins. Co.], 309 N.Y. 60, 67).