(August 10, 1989)

■ In the Matter of JERROLD D. ZIMAN et al., Appellants, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent, and ROBERT WALKER et al., Intervenors-Respondents.—Judgment, Supreme Court, New York County (Dennis Edwards, Jr., J.), entered September 12, 1988, which denied the petition and dismissed the proceeding, reversed, on the law, the petition granted, without costs, and the matter remitted to respondent, which is directed to issue the requested certificates of eviction pursuant to 9 NYCRR 2204.4 (g) and 2204.9.

In February 1984, petitioners purchased a small, 200-year-old, Federal-style townhouse in Greenwich Village for the express purpose of converting it back to its original use as a one-family residence and occupying it with their son and daughter, aged seven and two. The house had earlier been subdivided into as many as seven rent-controlled units of one to two rooms each.

Shortly after their purchase, petitioners applied, pursuant to then section 55 of the New York City Rent and Eviction Regulations (Regulations) (now 9 NYCRR 2204.5), for eviction certificates for the three remaining rent-controlled tenants. At

the time of their application, section 55 required the issuance of a certificate of eviction where the owner of a building containing 12 or less housing accommodations sought, in good faith, to recover possession of the premises for use and occupancy by him or his immediate family. Three and a half months later, on July 19, 1984, the Legislature amended section 55 to protect certain tenants, including ones who had lived in the building for 20 years or more (L 1984, ch 234). At the time, one of petitioners' tenants met the 20-year criterion and a second one qualified during the course of the administrative proceedings; the third died in 1987 and his apartment is no longer the subject of this proceeding. On August 9, 1984, petitioners filed three additional applications seeking certificates of eviction pursuant to section 59 of the Regulations (now 9 NYCRR 2204.9) on the ground that they sought, in good faith, to withdraw the occupied apartments from the market because the continued operation of such apartments imposed an undue hardship on them within the meaning of Regulations § 54 (g) (now 9 NYCRR 2204.4 [g]) because of their inability to make a net annual return of 8½% of the assessed valuation of the property without recourse to the evictions sought. In audits dated April 2, 1985 and October 7, 1985, respondent found that an 8½% return on the premises was not realizable.

In dismissing petitioners' consolidated applications, the Administrative Law Judge, finding that petitioners' sole purpose in seeking the eviction was to occupy the house as their primary residence, held that section 55 specifically controlled this factual situation and petitioners could not avoid it by looking to section 59. He then held that the Division must only consider the section 55 application which had to be dismissed because both tenants had lived there for more than 20 years.

In deciding petitioners' administrative appeal, respondent, in its order dated February 26, 1987, affirmed the Administrative Law Judge's findings and recommendations and held in pertinent part: "One section of the rent control laws and regulations may not be used to circumvent or evade another section. The case here is one where the owners are seeking to evict tenants for their own use and occupancy. The Legislature chose to extend special protection to certain classes of tenants in that situation. The parties may not use other sections of the regulations (9 NYCRR 2204.4 and 2204.9) to evade the intent of the Legislature."

Although there is no case law on the issue, the Regulations clearly provide that the protection afforded to long-term ten-

ants of 20 or more years standing is limited to applications for eviction on grounds of the landlord's personal use and occupancy *(see, e.g., Matter of McMurray v New York State Div. of Hous. & Community Renewal,* 135 AD2d 235, 236). If the Legislature, in adding such protection (L 1984, ch 234), intended to extend it to hardship applications under 9 NYCRR 2204.9 and 2204.4 (g), it could have done so. Absent any evidence of such intent, there is no basis for respondent's interpretation of the Legislature's amendment. Amendments or repeals of statutes by implication are not favored. *(People v Newman,* 32 NY2d 379, 389-390; McKinney's Cons Laws of NY, Book 1, Statutes § 370.)

Accordingly, since there is no question that petitioners meet the hardship requirements of 9 NYCRR 2204.9 and 2204.4 and their express purpose of converting their house to its original use as a single-family residence is consistent with their request to remove the apartments in issue from the housing market, to deny them the requested certificates of eviction was arbitrary and capricious. Concur—Murphy, P. J., Kupferman, Ross and Asch, JJ.

Ellerin, J., dissents in a memorandum as follows: It is clear that, no matter how their application was styled, petitioner landlords were seeking to recover possession of the rent-controlled apartments here at issue in order to occupy them for their own personal use. Respondent DHCR properly held that petitioners could not use one section of the New York City Rent and Eviction Regulations (Regulations) (i.e., § 59) to circumvent or evade another section (i.e., § 55) wherein the Legislature extended special protection to a certain class of tenants. By granting the petition herein, and overturning the DHCR determination, the majority is permitting petitioners to do precisely that.

Petitioners initially commenced these proceedings before the Office of Rent Control to recover possession of the subject apartments for their own personal use pursuant to section 55 of the New York City Rent and Eviction Regulations (renum 9 NYCRR 2204.5). During the pendency of the proceedings the Legislature amended section 55 to protect certain tenants from eviction, including those who had lived in the building for 20 years or more (L 1984, ch 234). When it became apparent that at least one of the tenants in petitioners' building met that criterion, petitioners filed new applications for certificates of eviction, grounded on the theory of economic hardship under section 59 of the Regulations (9 NYCRR 2204.4 [g]; 2204.9).

Notwithstanding the stated grounds of hardship in the amended applications for eviction, the petitioners repeatedly made clear throughout the subsequent proceedings that their purpose in seeking to recover these apartments was the continued desire to occupy them for their own use. In the amended applications, even while claiming financial hardship, they asserted: "However, our primary concern is not monetary. We did not buy the house to make money. Rather, we only want a good home for ourselves and our two young children." During oral statements at the hearing, the petitioners repeated that their purpose in seeking the evictions was to occupy the building themselves. Furthermore, in his affidavit in support of this CPLR article 78 petition, Jerrold D. Ziman stated: "This is not a case about money. This is a case involving shattered lives and my home, which is also the home of my wife and our two young children." Thus, it can readily be seen that while the applications for certificates of eviction were styled as based on "economic hardship", the overriding ground for the proceeding was not economic but rather the desire of the petitioner landlords to occupy the apartments for their own personal use.

The amendments to section 55, affording protection to 20-year tenants from eviction in proceedings brought by landlords seeking to recover possession for their personal use, were enacted by the Legislature in response to the devastating impact that eviction of long-term tenants can have on such tenants and their communities (L 1984, ch 234). We have consistently held that this remedial statute should be liberally construed to carry out the reform intended and spread its beneficial results as widely as possible (e.g., Matter of McMurray v New York State Div. of Hous. & Community Renewal, 135 AD2d 235, affd 72 NY2d 1022; Matter of Lavalle v Scruggs-Leftwich, 133 AD2d 313). Here, even though the application is nominally brought under section 59, it implicates the eviction of long-term tenants, to whom the Legislature expressly intended to provide protection against eviction where the landlord would be recovering the unit for personal use. That legislative intent would clearly be frustrated by permitting a landlord who avowedly seeks the unit for personal use to achieve that goal by ostensibly seeking the eviction for another purpose, here economic hardship, although the evidence supports a finding by the respondent agency that the latter purpose was not the landlord's actual intent.

The majority candidly admits that there is no case law governing the instant situation. Since the resolution of this

matter turns on the interplay of specialized regulations, we should defer to the interpretation and construction given by the administrative agency charged with administering these Regulations. Since that interpretation is not unreasonable or irrational, it should be upheld in this article 78 proceeding. *(E.g., Matter of Salvati v Eimicke,* 72 NY2d 784; *Matter of Howard v Wyman,* 28 NY2d 434, 438.)

In rejecting DHCR's determination in this case, the majority limits its focus to the uncontradicted fact that audits disclosed that an 8½% net annual return on this property was not realizable, and concludes that such showing alone, without more, automatically establishes the landlord's right to a hardship eviction under section 59. But to prevail under that section it is not enough to simply show that an 8½% annual return is not possible. What is necessary is a showing that it is the landlord's *good-faith* intention in seeking eviction to permanently remove the housing accommodation from the market *because of* financial hardship. That such element is critical to the Division's finding of entitlement under section 59 was expressly upheld by this court in *Matter of Asco Equities v McGoldrick* (285 App Div 381, *affd* 309 NY 738). In affirming the agency's denial of a section 59 certificate of eviction in that case, we held: "Obviously the rent commission has the burden and the responsibility of determining the good faith of the intention expressed by the landlord. It would be senseless to hold that the rent commission is bound by the landlord's bare assertion. That would be an illusory control indeed. Consequently, the rent commission must be satisfied, on objective grounds, that a landlord intends as he says." *(Supra,* at 384.)

The record in this case is replete with evidence supporting the Division's finding that the only purpose for which the petitioners were seeking these evictions was to occupy the units themselves and that the assertion of hardship was not made in good faith. Accordingly, that finding is beyond our review. *(Matter of Pell v Board of Educ.,* 34 NY2d 222.)

Parenthetically, it may be noted that even though the section 59 hardship application was denied, eviction is not the only remedy available in cases of economic hardship. As the Deputy Commissioner stated in his decision, financial relief may be available to the landlords under the "MBR" and "hardship" provisions of the Regulations.

Since the record here clearly demonstrates that a rational factual basis exists for the conclusions in the administrative

determination, it should be upheld. *(Matter of First Terrace Gardens v McGoldrick,* 1 NY2d 1.)

Accordingly, I would affirm that determination.