■ In the Matter of BRADLEY J. BARBER, Appellant, v ALLYSON P. STANLEY, Respondent. [687 NYS2d 765] —Peters, J. Appeal from an order of the Family Court of St. Lawrence County (Nelson, J.), entered October 31, 1997, which, *inter alia*, granted respondent's cross application, in a proceeding pursuant to Family Court Act article 6, to modify a prior order of custody and visitation.

The parties were married in 1988 and were divorced by a judgment dated July 3, 1996, which incorporated but did not merge their separation agreement. Such agreement detailed, *inter alia*, that the parties were to share joint custody of their child, Dean (born in 1989), with each having equal custodial time. The agreement further anticipated that both parties would be returning to school at some point in the future.

By September 1996, the relationship between the parties became increasingly strained such that communication was limited to letters or messages on answering machines. Petitioner, a licensed chiropractor in his own practice, advised respondent by letter that he intended to go back to school to become either a physical therapist or medical doctor and was considering programs for the following September in Vermont,

---

* The interview with Enowitz apparently was conducted in this fashion due to his health.

Wisconsin and Quebec. He indicated that while he had already been accepted for a program in medicine at such schools and that Vermont would be his first choice, he sought her input as to which location might best suit Dean's interest. At such time, and throughout the 1996-1997 academic year, respondent attended school in Genesee County seeking to obtain an Associate's degree as a physical therapy assistant. Respondent's school schedule required that petitioner have custody of Dean during the week and that respondent have custody on the weekends. Respondent was further advised by petitioner that he was considering filing for bankruptcy protection and was in danger of losing the trailer in which he and Dean resided during the week. According to respondent, this prompted her letter in January 1997 informing petitioner that she wanted to relocate with Dean to North Carolina after her graduation from college in May 1997.

Petitioner commenced this proceeding in April 1997 seeking an award of sole custody or, in the alternative, joint custody with primary physical placement of Dean with him, as well as permission to relocate to attend medical school in September 1998 in a State not yet determined. Respondent cross-petitioned for sole custody or joint custody with primary physical placement and an order permitting her to move with Dean to North Carolina.

At the fact-finding hearing, which was commenced in April 1997, petitioner testified that he had not yet been accepted at any school and was still in the process of applying to various schools. He did not rule out the possibility of applying to schools in North Carolina since he had previously lived there. Petitioner had not formulated a clear plan as to which particular course of medical training he would pursue or what he would do with his license upon graduation.

Respondent testified that she planned to move to North Carolina and that, during the pendency of this proceeding, she had received an offer of full-time employment as a physical therapist from a North Carolina hospital. She had made arrangements for her and her son to move in with her mother, an elementary school teaching assistant, who lived in the same school district as Dean's cousins, one of whom would attend the same school where Dean would be enrolled. Both respondent and her mother further testified about the living environment in North Carolina. Having anticipated the move and a swift determination by Family Court, respondent explained that she had chosen not to renew her lease when it expired in the summer of 1997 and had instead opted to "house sit" at

various locations in St. Lawrence County while Dean resided with her on the weekends.

Despite the parties having agreed to an award of joint custody just nine months earlier, petitioner challenged the adequacy of respondent's mental health and further alleged that she had engaged in custodial interference when she took Dean to Florida during the summer of 1996. Evidence revealed, however, that petitioner had given respondent permission to take the child to Florida so that she could pursue summer employment and visit with her sister. Moreover, petitioner was encouraged to visit his son in Florida, even to the extent that discounted air tickets were arranged for him by respondent's brother and respondent herself provided him with a place to stay and an automobile. In contradistinction to petitioner's unpropitious challenge to respondent's fitness and his disingenuous charge of custodial interference, the evidence demonstrated that respondent was deeply involved with Dean's schooling, initiated the child's participation in a counseling program and in outside athletic activities, and was the parent who ensured that Dean was provided with health insurance and dental care. Petitioner had not taken Dean to see a doctor or a dentist in more than a year, had not provided him with health insurance despite a yearly projected income of $50,000 and had not attended the child's athletic events simply because respondent would be present.

Admitted into evidence at the close of the proceeding was a report by Elizabeth Schockmel, a psychologist who had evaluated all three family members, including petitioner's live-in paramour of three months. As part of such evaluation, Schockmel obtained information from the child's teacher, his school counselor and David Butler, a psychologist in private practice who had provided services to both petitioner and respondent. Finding both parents to be committed and well-connected to their child, Schockmel changed the focus of her evaluation when petitioner indicated that he had no present intention of relocating. Upon her further evaluation of Dean, Schockmel recommended that neither parent be permitted to relocate in the immediate future "if such a relocation would move the child a significant distance from his other parent". In contrast, the Law Guardian recommended that custody be awarded to respondent and that Dean be permitted to accompany her to North Carolina because, unlike petitioner, she had actively pursued her professional training, had a specific job offer and proposed a clear plan for their living arrangements.

Upon the conclusion of the hearing, which included, *inter*

*alia*, testimony from petitioner's paramour, his office assistant and respondent's father, Family Court concluded that a joint custody arrangement was not appropriate due to the acrimonious relationship between the parties. Recognizing that Dean had expressed a preference to Schockmel to remain with his father, which Schockmel attributed to the subtle influence that petitioner had exerted upon Dean, the court noted its agreement with the parties' decision not to request a *Lincoln* hearing. Concluding that, at a minimum, petitioner misled respondent about his acceptance at medical school, the court next reviewed the factors detailed in *Matter of Tropea v Tropea* (87 NY2d 727) to determine whether the proposed move would be in Dean's best interest. Considering respondent's close relationship with her North Carolina family and that relationship's likely benefit to Dean, the likelihood that respondent would cooperate in fostering consistent contact between petitioner and the child, the economic reasons for the relocation and the realistic possibility that a parallel move could be made by petitioner, Family Court permitted the relocation to North Carolina. Petitioner appeals.

As "our authority in custody matters is as broad as that of Family Court * * * giv[ing] deference to its factual findings since it has the opportunity to observe the witnesses' demeanor and assess credibility * * * [w]e will not disturb those findings unless they lack a sound and substantial basis in the record" (*Matter of De Losh v De Losh*, 235 AD2d 851, 853, *lv denied* 89 NY2d 813 [citations omitted]). Applying that standard, we find petitioner's contentions regarding respondent's emotional instability, her nomadic "lifestyle" and her prior "custodial interference" to be unpersuasive. Upon the evidence adduced at the hearing with respect to the issue of joint custody, we must agree that the record was replete with indications that not even a modicum of cooperation, communication and respect was present. Accordingly, we cannot say that the determination of sole custody to respondent lacked a "sound and substantial basis".

Concerning Family Court's determination to permit respondent to relocate to North Carolina with the child, we heed the guidance of the Court of Appeals, which recognized that these fact-specific matters present such complex issues that each must be considered on its own merits with the "predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (*Matter of Tropea v Tropea,* 87 NY2d 727, 739, *supra*). Considering factors deemed relevant therein, we find that the record supports Family Court's conclu-

sion that respondent was the more stable parent and would be more likely to foster a meaningful relationship between the child and the noncustodial parent (*see, id.; Matter of De Losh v De Losh, supra*). Further, considering the relationships that would be fostered by respondent and Dean while residing with her extended family in North Carolina, the beneficial economic impact of the move, the cessation of exposure to what appeared to be continual acrimony between the parties and the feasibility of a parallel move by petitioner if he so desired, we fail to find any reason to disturb Family Court's determination.

Addressing petitioner's challenge to the Law Guardian's competency, we find no basis for reversal since an active role was taken in the questioning of witnesses and in the making of an independent recommendation to the court (*cf., Koppenhoefer v Koppenhoefer*, 159 AD2d 113, 117). We further note that the Law Guardian's decision not to request a *Lincoln* hearing or to interview the child, who was seven at the time of the hearing, was reasonable in light of the child's known preference for petitioner and the parties' clear direction that it was their desire that Dean be sheltered from these proceedings.

As to all remaining contentions, we find that they were either unpreserved for our review or lack legal merit. Accordingly, we affirm Family Court's order.

Mikoll, J. P., Mercure, Crew III and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.