■ In the Matter of the Claim of SANDRA BAILEY, Appellant, v BINGHAMTON PRECAST & SUPPLY CORPORATION et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [960 NYS2d 522]—

---

Egan Jr., J. Appeal from a decision of the Workers' Compensation Board, filed July 26, 2011, which ruled that decedent's death was not causally related to his employment and disallowed claimant's claim for workers' compensation death benefits.

Claimant's husband (hereinafter decedent) worked as a truck driver and heavy equipment mechanic for the employer for more than 20 years. Decedent, who had a preexisting heart condition, was admitted to a local hospital in September 2007, at which time he was found to be suffering from atrial fibrillation, exacerbation of congestive heart failure, morbid obesity, hypertension and hyperlipidemia, and a heart catheterization performed on November 15, 2007 "revealed diffused coronary disease involving . . . all three coronary systems." Various medications were prescribed, and decedent returned to work without restrictions on November 21, 2007.

On November 30, 2007, decedent worked his normal shift (7:00 a.m. to 3:30 p.m.) and thereafter remained on the employer's premises to perform certain repairs to his personal vehicle. At some point between 7:30 p.m. and 8:00 p.m. that evening, the employer's plant manager arrived and observed decedent working on his vehicle in the employer's garage. Shortly thereafter, the plant manager found decedent unresponsive on the floor of the garage, started CPR and called 911. Decedent was pronounced dead later that evening.

Claimant thereafter filed this claim for workers' compensation death benefits, which the employer and its workers' compensation carrier controverted. Following a hearing, a Workers' Compensation Law Judge disallowed the claim finding, insofar as is relevant here, that claimant was not entitled to the presumption set forth in Workers' Compensation Law § 21 (1) and, further, failed to demonstrate a causal relationship between decedent's death and his employment. The Workers' Compensation Board affirmed that decision and subsequently denied claimant's application for reconsideration and/or full Board review. Claimant now appeals from the Board's decision denying her claim for death benefits.

We affirm. Although claimant testified that decedent telephoned her on the night in question and indicated that he was staying late "to clean the pit," there is nothing in the employer's records to suggest that decedent either worked a double shift on the day of his death, incurred any overtime on that date or

actually was performing work for the employer at the time of his death. Accordingly, we have no quarrel with the Board's finding that decedent "cannot be considered to have been in the course of his employment at [the] time of his demise."

As to the issue of causal relationship, claimant bore the burden of establishing—by competent medical evidence—that a causal connection existed between decedent's death and his employment (*see Matter of Droogan v Raymark Indus., Inc.*, 59 AD3d 803, 804 [2009]; *see also Matter of Norton v North Syracuse Cent. School Dist.*, 59 AD3d 890, 890-891 [2009]). Contrary to claimant's assertion, this is not a case where the Board ignored uncontroverted medical evidence and impermissibly fashioned its own opinion; rather, this is a case where the medical proof adduced by claimant was insufficient to establish the required causal connection (*see Matter of Zahm v National Fuel*, 72 AD3d 1311, 1312-1313 [2010]; *Matter of Albert v Miracle Makers of Bedford Stuyvesant HFDC, Inc.*, 13 AD3d 925, 926 [2004]; *Matter of Freitag v New York Times*, 260 AD2d 748, 749 [1999]).

Claimant's primary care physician indeed testified that it was "extremely likely" that the "heavy work" that decedent performed on the day of his death contributed to his passing, and both claimant's cardiologist and the physician who conducted an independent review of decedent's medical records reached a similar conclusion. However, a review of the record reveals that these opinions were based upon erroneous assumptions and facts not borne out by the documentary evidence or hearing testimony—namely, that decedent worked a double shift and was engaged in strenuous physical activity on the day of his death (*see id.*; *compare Matter of Owoc v Syracuse Univ.*, 301 AD2d 765, 766 [2003], *lv denied* 100 NY2d 501 [2003]).

As noted previously, there is no support for a finding that decedent worked a double shift or otherwise incurred overtime on the day of his death. Similarly, the employer's president testified that heavy lifting was "[n]ot . . . a normal part of [decedent's] job," as "various types of equipment" were available to lift anything over 50 pounds. The employer's president further testified that he was aware that decedent did not "feel well" and "was struggling," as a result of which "[n]obody was pushing [decedent] too hard."* In light of such testimony, there is substantial evidence to support the Board's finding that claimant failed to establish a causal connection between decedent's employment and his death.

---

* Upon reviewing the hearing testimony and records, the physician who conducted the independent medical review issued an addendum to his report, wherein he indicated "a change of . . . opinion on the [issue of] causal rela-

Mercure, J.P., Spain and McCarthy, JJ., concur. Ordered that the decision is affirmed, without costs.

---

tionship" and stated that he no longer could "definitely conclude" that a causal relationship existed between decedent's employment and his death.