[970 NYS2d 111]

In the Matter of the Claim of MAUREEN KIGIN, Appellant, v STATE OF NEW YORK WORKERS' COMPENSATION BOARD et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, July 18, 2013

300

## APPEARANCES OF COUNSEL

*Grey & Grey, LLP*, Farmingdale (*Robert E. Grey* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Steven Segall* of counsel), for State of New York Workers' Compensation Board, respondent.

*Steven Licht, Special Funds Conservation Committee*, Albany (*Jill B. Singer* of counsel), for Special Fund for Reopened Cases, respondent.

## OPINION OF THE COURT

SPAIN, J.

In 1996, claimant was in a work-related automobile accident in which she sustained injuries to her head, neck and lower back; she received workers' compensation benefits and returned to work full time in 1998. Medical coverage was provided for numerous diagnostic tests and studies, chiropractic and orthopedic treatments, and physical and other therapies for her ongoing neck and back pain as prescribed by several treating physicians. Her diagnoses included cervical and lumbar radiculopathies, muscle spasm, dysesthesias/paresthesias, cervical disc disease and herniated disc. In 2006, liability for the claim was transferred to the Special Fund for Reopened Cases (*see* Workers' Compensation Law § 25-a) and she was classified as having a permanent partial disability. Since 2006, Andrea Coladner, board certified in physical medicine and rehabilitation, has been claimant's treating physician, and she prescribed numerous modalities and therapies. At Coladner's request, the Special Fund authorized and paid for the foregoing treatments up until early 2011, including acupuncture (three times per week for six weeks) to treat and decrease an exacerbation of cervical pain and to increase her range of motion and circulation.

In 2007, the Legislature enacted comprehensive reforms to the Workers' Compensation Law (*see* L 2007, ch 6). Among the reform revisions, the Legislature amended Workers' Compensation Law § 13-a (5) by directing that the Workers' Compensation Board, with the approval of the Superintendent of Insur-

ance,[1] "shall issue and maintain a list of pre-authorized procedures under this section." A task force comprised of medical professionals appointed by the impacted parties formulated the Medical Treatment Guidelines (*see* 12 NYCRR part 324) (hereinafter the Guidelines), which the Chair of the Board adopted as the standard of care for all medical treatment for workplace injuries rendered on or after December 1, 2010 related to four body parts: back, neck, shoulder and knee (*see* 12 NYCRR 324.2 [former (a)]).[2] The Guidelines, which were incorporated by reference into the regulations (*see* 12 NYCRR 324.2 [a]), adopted a preauthorized specific procedure list for many commonly performed medical tests and services. Included services, treatments and tests are covered in the scope and duration provided and do not require prior authorization regardless of their cost, with limited exceptions (*see* 12 NYCRR 324.2 [d] [1]).[3] The regulations set forth a variance procedure pursuant to which medical treatment providers may request approval for medical care or testing for injured workers that is not preapproved as medically necessary in the Guidelines, or for authorized treatment in excess of the scope or duration authorized, upon a showing that the treatment is appropriate and medically necessary (*see* 12 NYCRR 324.2 [e]; 12 NYCRR 324.3 [a] [2]).

After the regulations and Guidelines went into effect, as relevant here, Coladner filed an MG-2 form in March 2011 requesting a variance for additional acupuncture treatments in excess of the allowance under the Guidelines for claimant's cervical spine,[4] to address ongoing back and neck pain. At the Special Fund's behest, Peter Chiu, a physician board certified in physical medicine and rehabilitation and certified in acupuncture, conducted an independent medical exam and a traditional Chinese medical exam of claimant and reviewed her medical rec-

---

1. In 2011, the Insurance Department and the Banking Department were consolidated into the Department of Financial Services, so the 2013 version of Workers' Compensation Law § 13-a (5) refers to approval by the Superintendent of Financial Services.

2. Amendments effective March 1, 2013 renumbered some provisions, but do not affect our analysis.

3. The regulations also provide that specific medical procedures costing more than $1,000 are deemed "consistent with the . . . Guidelines" but require preauthorization (12 NYCRR 324.2 [d] [2]).

4. The New York Neck Injury Medical Treatment Guidelines (1st ed, June 30, 2010 [http://www.wcb.ny.gov/content/main/hcpp/MedicalTreatment Guidelines/NeckInjuryMTG2010.pdf (eff Dec. 1, 2010)]) were applied to this variance request (*see* 12 NYCRR 324.2 [former (a) (2)] [an updated second edition became effective Mar. 1, 2013]; *see also infra* at n 13).

ords. Based upon Chiu's determination that there was a lack of objective findings to support claimant's subjective complaints and that further acupuncture treatments were not medically necessary, the Special Fund denied the requested variance pursuant to 12 NYCRR 324.3 (b) (3) (iii).[5] Claimant sought review (*see* 12 NYCRR 324.3 [c]) and, after Coladner and Chiu testified at depositions, a Workers' Compensation Law Judge (hereinafter WCLJ) denied the requested variance, determining that Coladner, on behalf of claimant, had not demonstrated the medical necessity of the requested treatments. The Board affirmed, and claimant now appeals.

■ Initially, claimant argues that the Board lacked the authority to promulgate the regulations and the incorporated Guidelines, which she contends are not consistent with the enabling legislation and the workers' compensation statutory scheme. The Board is broadly charged with the responsibility and power to administer and enforce the Workers' Compensation Law and regulations, to regulate treatment and determine all claims for benefits or compensation for work-related injuries, and to "adopt reasonable rules consistent with and supplemental to the provisions of this chapter," while the chair may adopt reasonable consistent regulations (Workers' Compensation Law § 117 [1]; *see* Workers' Compensation Law §§ 141, 142; *Matter of Belmonte v Snashall*, 2 NY3d 560, 567 [2004]). Although administrative agencies have no inherent legislative power, they have "all the powers expressly delegated to [them] by the Legislature" (*Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d 186, 191 [1988]) and are authorized to "fill in the interstices in the legislati[on]" by promulgating rules and regulations consistent with their enabling legislation (*Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]).

> "[I]t is not always necessary that the Legislature provide precise guidelines to an agency charged with carrying out the policies embodied in a legislative delegation of power. In certain technical areas, where flexibility is required to enable an administrative agency to adapt to changing conditions, it is

---

**5.** While Chiu further concluded that "claimant is not disabled," that finding went beyond—and was not essential to—his determination of no medical necessity for the requested variance, and was not relied upon by the Workers' Compensation Law Judge or the Board in their respective determinations denying the variance.

sufficient if the Legislature confers broad power upon the agency to fulfill the policy goals embodied in the statute, leaving it up to the agency itself to promulgate the necessary regulatory details" (*Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d at 191 [citation omitted]).

We will uphold regulations that are consistent with and supplemental to the Workers' Compensation Law, provided they have "a rational basis and [are] not unreasonable, arbitrary, capricious or contrary to the statute under which [they were] promulgated" (*Matter of Smith v Albany County Sheriff's Dept.*, 82 AD3d 1334, 1335 [2011], *lv denied* 17 NY3d 770 [2011] [internal quotation marks and citations omitted]).

Here, as part of its workers' compensation reform package, the Legislature expressly authorized the Board to "issue and maintain a list of pre-authorized procedures under this section" (Workers' Compensation Law § 13-a [5]), which the Board accomplished by promulgating the subject regulations and incorporated Guidelines (*see* 12 NYCRR part 324). The purposes of the reform legislation were sweeping: to remove impediments to prompt diagnosis and treatment of injured workers; to confer regulatory flexibility on the Board to maintain a list of preauthorized medical tests and treatment reflecting best practices, cost fluctuations and managed care opportunities; to reduce litigation costs and disputes between medical providers and payers; to lower costs for employers and increase benefits to injured workers; and to eliminate unnecessary and potentially harmful treatment (*see* Governor's Program Mem, L 2007, ch 6, 2007 NY Legis Ann at 4; Letter from St Ins Dept, Mar. 13, 2007, Bill Jacket, L 2007, ch 6 at 45). We find that the Legislature expressly delegated to the Board the authority and obligation to promulgate the regulations (and incorporated Guidelines containing the list of preauthorized procedures) and that the Legislature's delegation of this authority to the Board was lawful (*see Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d at 191). Further, we determine that the Board acted lawfully, as the regulations and incorporated Guidelines are "consistent with and supplemental to" the provision of the Workers' Compensation Law and statutory scheme (Workers' Compensation Law § 117 [1]; *see Matter of Smith v Albany County Sheriff's Dept.*, 82 AD3d at 1335), and "fulfill the policy goals embodied in the statute [i.e., Workers' Compensation Law § 13-a (5)]" (*Matter of Consolidated Edison*

*Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d at 191).

We reach the foregoing conclusions mindful that, under the Workers' Compensation Law scheme, employers are required to pay for medical treatment, procedures, devices, tests and services (hereinafter medical care) for employees who sustain causally related injuries "for such period as the nature of the injury or the process of recovery may require" (Workers' Compensation Law § 13 [a]; *see Matter of Laezzo v New York State Thruway Auth.*, 71 AD3d 1252, 1253 [2010]). However, medical necessity and appropriateness (hereinafter medical necessity) have always been prerequisites to an employer's obligation, and the denial of payment for medical care has been upheld where it is "duplicative, excessive or inappropriate for the claimed injury, and accordingly of no benefit to the [injured worker]" (*Matter of Spinex Labs. [Patton]*, 213 AD2d 884, 885 [1995], *lv denied* 86 NY2d 702 [1995]). Prior to the enactment of the Guidelines, for treatments that were not special medical services enumerated in Workers' Compensation Law § 13-a (5) or which cost less than $500, disputes over the medical necessity or the frequency/ duration of medical care—and whether the medical provider would be paid and to what extent—were often made *after* the care was provided, on a case-by-case basis when the employer disputed the bill; they were ordinarily resolved through the relevant arbitration panel for the medical provider's profession with few appeals to this Court (*see* Workers' Compensation Law §§ 13-g, 13-k, 13-*l*, 13-m; *see also Matter of Spinex Labs. [Patton]*, 213 AD2d at 885; *Employer: Livingston County*, 2011 WL 5618432, *5, 2011 NY Wrk Comp LEXIS 6751, *15-16 [WCB No. 7990 5338, Nov. 9, 2011]).

The legislative history reflects that the intent of the amendments to Workers' Compensation Law § 13-a (5) was to empower the Board to devise a list of preauthorized diagnostic tests and treatments that would be automatically covered in the frequency and duration recommended, regardless of cost, thereby decreasing provider bill disputes, unnecessary or ineffective treatment, and delays and inconsistency in medical care, among other benefits, and eliminating the need for preauthorization for medical care consistent with best medical practices as reflected in the Guidelines.[6] Now, pursuant to Workers' Compensation Law

---

**6.** The regulations also provide that

§ 13-a (5), while certain enumerated special medical services require preauthorization, the limitation on cost was raised to those in excess of $1,000, and other such special medical services that previously required preauthorization are now included in the Guidelines (*see* 12 NYCRR 324.2 [d]; 325-1.4 [a]). The overall scheme thus now ensures medical care consistent with the Guidelines, requires preauthorization for certain statutory special medical services (costing over $1,000) unless listed in the Guidelines and a variance for any other care not included in the Guidelines, and it also allows for extended or more frequent medical care beyond the maximum recommended in appropriate cases where medical necessity is demonstrated through the variance process (*see* 12 NYCRR 324.3 [a] [1], [2], [3] [i] [a]; [ii] [b]).

As noted, medical necessity has always been a prerequisite to the employer's obligation to pay for medical tests and treatment under Workers' Compensation Law § 13 (a) (*see Matter of Spinex Labs. [Patton]*, 213 AD2d at 885) and Workers' Compensation Law § 13-a (5) (*see Matter of Casiano v CCIP/Union Settlement Home Care*, 19 AD3d 719, 720 [2005]). Significantly, in amending Workers' Compensation Law § 13-a (5) to authorize the Board to devise a list of preauthorized procedures, the Legislature purposefully conferred the authority on the Board to *predetermine* medical necessity for medical care, and its scope and duration, consistent with best medical practices. Thus, the Board acted within its legislatively conferred authority when it devised a list of preapproved medical care deemed in advance to be medically necessary for specified conditions, and did so in a manner consistent with Workers' Compensation Law § 13 (a) and the overall statutory scheme.

■ Claimant further contends that the variance procedure conflicts with provisions of the Workers' Compensation Law and impermissibly shifts the burden to treating providers to demonstrate medical necessity. We disagree. Mindful of the remedial nature of the Workers' Compensation Law, we find nothing in the statutes themselves, or in the case law interpreting

"[m]aximum medical improvement shall not preclude the provision of medically necessary care for claimants. Such care shall be medically necessary to maintain function at the maximum medical improvement level or to improve function following an exacerbation of the claimant's condition. Post-maximum medical improvement medical services shall conform to the relevant . . . Guidelines" unless a variance is granted (12 NYCRR 324.2 [f]; *see* 12 NYCRR 324.1 [e] [definition of maximum medical improvement]).

the statutes, that compels or even supports the conclusion that, prior to the legislative reform, the ultimate burden of proof on contested issues of medical necessity and appropriateness of medical care rested with the employer/carrier.[7] Even assuming that the employer/carrier had such a burden prior to the reform legislation, under the reform scheme, the Board has now made the threshold *predetermination* of medical necessity through the Guidelines. The employer/carrier is obligated to provide coverage for all standard care falling within those Guidelines, regardless of cost and without an individualized, case-by-case determination of medical necessity, which has now been predetermined by the Board. When a medical treatment provider wishes to provide care that falls outside of the Guidelines, the provider must make a showing that the "variance is appropriate for the claimant and medically necessary" (12 NYCRR 324.3 [a] [2]).[8]

We discern nothing improper or inconsistent with the variance procedure. Under the reform legislation, the very purpose behind the Legislature empowering the Board to "issue and maintain a list of pre-authorized procedures" (Workers' Compensation Law § 13-a [5]) was to *preordain* that the listed medical care is *medically necessary* for the conditions indicated and those not included are *not medically necessary*. The employer is both bound to that predetermined list and entitled, as a threshold matter, to rely on it. There is nothing impermissible in requiring treating providers (on behalf of claimants) who wish to provide care outside of that evidence-based stan-

7. In contrast to the dissent, we do not read *Matter of Weingarten v Pathmark Stores* (256 AD2d 648, 650 [1998]), or any other authority, as previously imposing a burden of proof on the employer/carrier when the issues of medical necessity and appropriateness were contested. That case refers to the employer's well-established and unchanged obligation to rebut the presumption contained in Workers' Compensation Law § 21 (1) that an accident that occurs in the course of employment is presumed to arise out of the employment (*see Matter of Brown v Clifton Recycling*, 1 AD3d 735, 735-736 [2003]). Likewise, *Matter of Laezzo v New York State Thruway Auth.* (71 AD3d at 1253) involved a claimant who satisfied his burden of establishing a causal relationship between his employment and the requested surgery, which would assist in his recovery.

8. This must include the basis for the provider's opinion, a statement that the claimant agrees to the care, and an explanation of why the alternatives approved under the Guidelines are not appropriate or sufficient (*see* 12 NYCRR 324.3 [a] [3] [i]). For a claim involving a variance to the duration or frequency of treatment, the request must also indicate functional outcomes that, as of the request, have continued to demonstrate objective improvement from the subject treatment and are reasonably expected to further improve with additional treatment (*see* 12 NYCRR 324.3 [a] [3] [ii] [b]).

dard to make a threshold showing of medical necessity, i.e., it is fair to require treatment providers to comply with the variance procedure and overcome the predetermination of no medical necessity for medical care that falls outside of the Guidelines. That is, while prior to the Guidelines it was incumbent upon the employer/carrier to challenge the medical necessity for requested care, by contrast, the Guidelines establish in advance the necessity of medical care and its parameters. Given that threshold predetermination of no medical necessity for care falling outside the Guidelines, it would be illogical to then further require—as an initial matter—the employer/carrier to *disprove*—on a case-by-case basis—the medical necessity of care falling *outside* the Guidelines, as the Board has *already made* that standardized threshold determination *by excluding* that care from the list. The very purpose for the promulgation of the Guidelines is to decide medical necessity in advance, to bind employers/carriers to the Guidelines and allow them to rely on it, and to require medical providers to make a preliminary showing—pursuant to the variance procedure—of medical necessity in order to obtain a case-by-case review of their request for treatment falling outside the Guidelines. Thus, the imposition of a burden of proof on providers/claimants for care outside the Guidelines is not improper.

To the extent that claimant contends that the Guidelines conflict with the statutory presumption contained in Workers' Compensation Law § 21 (5), we discern no irreconcilable inconsistency. That statute provides that for workers' compensation claims, "it shall be presumed in the absence of substantial evidence to the contrary . . . [t]hat the contents of medical and surgical reports introduced in evidence by claimants for compensation shall constitute prima facie evidence of fact as to the matter contained therein" (Workers' Compensation Law § 21 [5]). This statute "is intended to reduce the necessity for the actual testimony of the claimant's expert" (*Matter of Freitag v New York Times*, 260 AD2d 748, 749 [1999]; *see Matter of McDonald v Danforth*, 286 AD2d 845, 846 [2001]); while establishing the "facts" therein if not controverted, this presumption does not establish the medical necessity of or entitlement to care in a particular case. Claimants seeking treatment outside the Guidelines may submit their medical reports and continue to rely on that presumption, but nonetheless must also satisfy the requirement that their treating medical provider establish the medical necessity of the proposed care for which a

variance is sought (*see* 12 NYCRR 324.3 [a] [2]; [b] [2] [i] [c]). Consequently, while claimants continue to enjoy the presumption that their medical records establish facts and information contained therein, a carrier may still deny a variance if the claimants' provider does not meet its initial burden of submitting a medical opinion of medical necessity satisfying the variance procedure, in order to overcome the administrative predetermination of no medical necessity that underlies the Guidelines. The variance process does not undermine or conflict with this statutory presumption.

With regard to claimant's argument that the Guidelines improperly allow an employer/carrier to rely upon an opinion by a "medical professional" (12 NYCRR 324.1 [d]), as opposed to a "physician" (Workers' Compensation Law § 13-a [5]), when reviewing a variance request (*see* 12 NYCRR 324.3 [b] [2] [i] [f]; [3] [iii]), we need only note that, in the case before us, the claim was denied after a hearing at which the Board received and considered the medical opinions of each party's board-certified physician. Therefore, this argument is not properly before us on claimant's appeal.

Turning to claimant's contention that the Guidelines deprived her of due process of law, we are not persuaded, as we find that the regulations provide an "opportunity to be heard at a meaningful time and in a meaningful manner" (*Mathews v Eldridge*, 424 US 319, 333 [1976] [internal quotation marks and citations omitted]). The regulations provide an expedited process for determining the medical necessity and appropriateness of requested medical care falling outside of, and not preauthorized by, the Guidelines,[9] as well as a review process which, facially and as applied to claimant here,[10] comported in all respects with due process.

---

**9.** The carrier or Special Fund must respond to the variance application within 15 days (*see* 12 NYCRR 324.3 [b] [2] [i] [a]) unless it desires an independent medical examination, of which it must notify the chair within five business days and respond to the variance request within 30 days of receipt (*see* 12 NYCRR 324.3 [b] [2] [ii] [a]). Claimants may request review of denied variances within 21 business days (*see* 12 NYCRR 324.3 [c]) and may request an expedited hearing, which must be commenced within 30 days unless an adjournment is granted for good cause by the WCLJ, who must render a decision on the record unless the WCLJ finds complex medical issues, in which case a decision must be issued within 30 days (*see* 12 NYCRR 324.3 [d] [3] [i], [ii]).

**10.** In response to claimant's March 8, 2011 variance request, an independent medical examination was conducted on March 24, 2011, the request was

[ To the extent that claimant contends that the regulations and Guidelines unfairly diminish the medical care to which she is entitled, given that the Workers' Compensation Law is an injured worker's exclusive remedy (*see* Workers' Compensation Law § 11), we cannot agree. The Guidelines do not predeny or exclude previously available care, as claimant contends. Rather, medical necessity has always been an underlying prerequisite to an employer/carrier's obligation to pay for medical care. The Guidelines adopt an evidence-based list of preauthorized procedures, which provide a benefit and advantage to injured workers and their treatment providers, and a clear-cut obligation on employers/carriers. On the other hand, medical procedures not in the Guidelines—which were thus not administratively preapproved for medical necessity—require that claimants overcome that predetermination (*see* 12 NYCRR 324.3 [a] [2]). The enabling legislation, Guidelines and the variance process do not exclude any particular care. Instead, they represent and reflect a rational policy choice by the Legislature to confer authority on the Board to determine in advance the medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process. While changing the process for determining medical necessity, the foregoing did not deprive claimants of any right to seek medically necessary care or alter the ongoing obligation of employers/carriers to pay for such treatment under Workers' Compensation Law § 13 (a).

 Further, under established authority, application of the regulations prospectively to all treatment rendered on or after December 1, 2010 (*see* 12 NYCRR 324.2 [former (a)]) did not constitute retroactive application. That is, a statute or regulation is not considered to be applied retroactively "when made to apply to future transactions merely because such transactions relate to and are founded upon antecedent events" (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 57 [2011] [internal quotation marks and citation omitted]), i.e., the Guidelines apply only to prospective medical treatment.

 Finally, we reject claimant's argument that the Guidelines

denied on April 5, 2011 and, after April 21, 2011 depositions of the medical experts (Coladner and Chiu) and recusal by the first WCLJ in May 2011 which is not in issue, a decision was made by the WCLJ on June 2, 2011.

were misapplied to her variance request[11] on the theory that she is being treated for chronic pain and the Guidelines address only acute care. This contention relies on the erroneous supposition that because the Board's chair convened a medical advisory committee in 2011 to develop chronic pain guidelines, the Guidelines here do not apply to her variance request to treat chronic pain. In fact, a report from the Board reflects that the anticipated chronic pain guidelines "will supplement current recommendations on chronic pain" (New York State Workers' Compensation Board, Success of New York's 2007 Workers' Compensation Reform at 7).[12] The Guidelines for treatment of a neck injury specifically address the use of acupuncture[13] as "a procedure used for the relief of pain and inflammation" that "may be used as an adjunct to physical rehabilitation and/or surgical intervention to hasten the return of functional activity," making no distinction between its use for acute or chronic pain (New York State Workers' Compensation Board, New York Neck Injury Medical Treatment Guidelines at 20 [1st ed, June 30, 2010], incorporated into 12 NYCRR 324.2 [former (a) (2)]). The Board's interpretation and application of the Guidelines to claimant's variance request were rational and reasonable (*see Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

We have examined claimant's remaining contentions, many of which challenge the wisdom or efficacy of the reform measures and, as such, are better addressed to the Legislature, and conclude that none warrants disturbing the Board's decision denying the variance request.

McCARTHY, J. (dissenting). I agree with the majority that the Workers' Compensation Board has authority to promulgate reasonable rules and regulations consistent with the Workers' Compensation Law (*see* Workers' Compensation Law § 117 [1]), including to compile a list of preauthorized Medical Treatment Guidelines (*see* 12 NYCRR part 324 [hereinafter the Guidelines]; *see* Workers' Compensation Law § 13-a [5]). However, I cannot agree with the majority's overreaching conclusion that medical

---

11. Notably, claimant does not challenge the Board's determination that Coladner failed to satisfy her burden of proving medical necessity for the requested variance.

12. We are cognizant of the medical advisory committee's ongoing efforts to develop revised chronic pain guidelines, which were not before the Board on this variance application and were not considered by this Court.

13. For neck injuries, a maximum of 10 treatments is recommended over the duration of one month, with a frequency of one to three times per week, with effects expected in three to six treatments.

treatments falling outside the Guidelines are predetermined and presumed not to be medically necessary. On the contrary, the Workers' Compensation Law requires employers/carriers to pay for medical care for employees who sustain causally related injuries "for such period as the nature of the injury or the process of recovery may require" (Workers' Compensation Law § 13 [a]). The Guidelines were promulgated in furtherance of that objective, in order to remove impediments to prompt diagnostic and treatment measures for injured claimants (see Governor's Program Mem, L 2007, ch 6, 2007 NY Legis Ann at 4). I find no support for the majority's position that they were intended to create a preordained and exhaustive list of medically necessary treatments, thereby rendering all nonlisted treatments presumptively not medically necessary and creating a presumption that the employers/carriers could "rely on" in fulfilling their statutory obligation to provide medical care to injured claimants.

Moreover, the procedure specified in the regulations for requesting a variance from those Guidelines conflicts with the statutory scheme. The Workers' Compensation Law presumes that the contents of medical and surgical reports introduced by claimants shall constitute prima facie evidence of facts of the matter contained therein (see Workers' Compensation Law § 21 [5]), and the burden is on the employer/carrier to demonstrate that any award is improper (see Workers' Compensation Law § 13 [a]; see also Matter of Laezzo v New York State Thruway Auth., 71 AD3d 1252, 1253 [2010]; Matter of Weingarten v Pathmark Stores, 256 AD2d 648, 650 [1998]).* By contrast, the

---

* Contrary to the majority's contention, where, as here, a statutory presumption is applicable, the burden of proof rests with the employer/carrier to rebut that presumption by introducing substantial evidence to the contrary. I do not, as the majority suggests, find that the presumption contained in Workers' Compensation Law § 21 arises only when the issue involved is whether the accident occurred within the scope of employment. The statute explicitly states that it applies "[i]n any proceeding for the enforcement of a claim for compensation" (Workers' Compensation Law § 21; see Martin Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 13 at 537). I find that the burden is the same—resting on the employer/carrier—when any of the five presumptions under that statute arises (see e.g. Matter of Browne v New York City Tr. Auth., 66 AD3d 1290, 1290 [2009] [finding burden on employer to rebut presumption arising under Workers' Compensation Law § 21 (1)]; Matter of Matias v Donmoor, Inc., 133 AD2d 998, 999 [1987] [finding burden on employer to rebut presumption arising under Workers' Compensation Law § 21 (3)]; Matter of Milz v J & R Amusement Corp., 96 AD2d 607, 607-608 [1983]; Matter of Miko-

regulations provide that a variance request for treatment outside the Guidelines may be denied "on the basis that the [t]reating [m]edical [p]rovider did not meet the burden of proof that a variance is appropriate for the claimant and medically necessary" (12 NYCRR 324.3 [b] [2] [i] [c]; see 12 NYCRR 324.3 [a] [2]; [b] [3] [iii]). The majority accepts the burden shifting inherent in the regulations by acknowledging that "while prior to the Guidelines it was incumbent upon the employer/carrier to challenge the medical necessity for requested care, by contrast, the Guidelines establish in advance the necessity of medical care and its parameters." But a variance request will only be submitted where the treatment is outside the Guidelines. If the Guidelines automatically meet the employer/carrier's burden, as posited by the majority, that would eviscerate the statutory presumption in every case where a variance request is submitted, immediately shifting the burden back to the claimant with no obligation on or proof required of the employer/carrier, despite the statutory existence of the presumption absent "substantial evidence to the contrary" (Workers' Compensation Law § 21). Furthermore, contrary to the majority's statement, it is not "illogical" to require the employer/carrier to offer proof regarding the lack of medical necessity for treatment outside the Guidelines once a claimant has submitted medical records from his or her treating medical provider that raise the statutory presumption. The presumption only arises regarding treatment being appropriate and medically necessary if the medical records submitted by a claimant contain supported information concerning those issues (cf. Matter of Freitag v New York Times, 260 AD2d 748, 749-750 [1999]). Here, although claimant has been deemed permanently partially disabled—a level of disability that the Guidelines do not address—she was not given the benefit of the statutory presumption despite her treating medical provider's medically supported opinion that treatment outside the Guidelines was medically necessary and appropriate.

It is well settled that "the fundamental principle of the compensation law is to protect the worker, not the employer, and the law should be construed liberally in favor of the employee" (Matter of Illaqua v Barr-Llewellyn Buick Co., 81 AD2d 708, 708 [1981] [internal quotation marks and citations omitted]).

lajczyk v New York State Dept. of Transp., 51 AD2d 1076, 1076 [1976] [finding burden on employer to rebut presumption arising under Workers' Compensation Law § 21 (4)]).

"The social welfare considerations in providing workers' compensation benefits to injured employees include the elimination of obstacles to a claimant's award. [Workers' Compensation Law § 21] creates presumptions which are available to a claimant and should not be underestimated. They are intended to benefit the claimant and ease the burden of presenting and establishing a compensable claim before the [Workers' Compensation] Board" (Martin Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 21 at 317).

Here, the variance procedures set forth in the Guidelines undermine the remedial purpose of the Workers' Compensation Law and are contrary to the legislative purpose behind authorizing the Board to promulgate such Guidelines.

In addition, the Guidelines also permit a nonphysician to offer medical opinions as the basis for the denial of a claimant's variance request for medical care (*see* 12 NYCRR 324.3 [b] [2] [i] [c]), unlike the statutory regimen that requires a board-authorized physician to introduce conflicting medical evidence to refute a claimant's request for medical care (*see* Workers' Compensation Law § 13-a [5]). Although, as the majority notes, a physician reviewed, among other things, the variance application herein, it is unclear whether the Board denied the variance based upon an evaluation of conflicting medical testimony. As the majority finds that any treatment outside the Guidelines automatically satisfies any burden on the employer/carrier that rebuts any statutory presumption afforded a claimant, there is no need for any physician review or evaluation by the Board of medical evidence. The Board simply concluded that Andrea Coladner failed to meet the burden of proof of medical necessity in the variance application, without a clear explanation of how or at what stage, rendering it impossible for us to ascertain whether the Board's denial is based upon the evaluation of medical evidence or on the mere fact that the requested treatment was outside the Guidelines.

I am also compelled to comment on the majority's statement regarding the medical findings of Peter Chiu. While Chiu erroneously concluded that "claimant is not disabled," the majority states that this "was not essential to . . . his determination of no medical necessity for the requested variance." I cannot agree. Claimant was seeking treatment for an established injury for

which the Board had already classified her as permanently partially disabled. In my opinion, it defies logic to suggest that a finding of a lack of disability—contrary to the Board's prior finding—would not influence the denial of the request for medical treatment for that disability. Such a glaring error in Chiu's medical conclusion, in my view, discredits his medical opinion and makes reliance upon it unreasonable.

In sum, I would remit the matter to the Board for consideration of claimant's variance request in accordance with the appropriate standards contained in the Workers' Compensation Law.

Rose, J.P., and Stein, J., concur with Spain, J.; McCarthy, J., dissents in a separate opinion.

Ordered that the decision is affirmed, without costs.