Matter of Town of Brookhaven v Ball (2025 NY Slip Op 01686)

Matter of Town of Brookhaven v Ball

2025 NY Slip Op 01686

Decided on March 20, 2025

Appellate Division, Third Department

Egan Jr., J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 20, 2025

CV-23-1327

[*1]In the Matter of Town of Brookhaven, Appellant,
v
Richard A. Ball, as Commissioner of Agriculture and Markets, et al., Respondents, and Central Pine Barrens Joint Planning & Policy Commission, Appellant.

Calendar Date:January 13, 2025

Before: Egan Jr., J.P., Clark, Reynolds Fitzgerald, Fisher and Mackey, JJ.

Rosenberg Calica Birney Liebman & Ross LLP, Garden City (Robert M. Calica of counsel), for Town of Brookhaven, appellant.
Bond, Schoeneck & King, PLLC, Garden City (Richard S. Finkel of counsel), for Central Pine Barrens Joint Planning & Policy Commission, appellant.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for Richard A. Ball, respondent.
Farrell Fritz, PC, Hauppauge (John C. Armentano of counsel), for Delea Sod Farms, Inc., respondent.

Egan Jr., J.P.
Appeals from a judgment of the Supreme Court (Gerald Connolly, J.), entered June 30, 2023 in Albany County, which, among other things, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Agriculture and Markets.
Respondent Delea Sod Farms, Inc. (hereinafter Delea Farms) operates a farm in an agricultural district in the Town of Brookhaven, Suffolk County, where it primarily produces sod for sale that is used at, among other places, Yankee Stadium. Mulch and compost are stored and sold at the farm as well. The farm also lies within the Central Pine Barrens area as defined by the Long Island Pine Barrens Maritime Reserve Act (ECL 57-0101 et seq. [hereinafter the Pine Barrens Act]), the Pine Barrens being an environmentally sensitive area of Long Island that contains an aquifer from which many locals obtain drinking water and is subject to "laws and policies . . . at all government levels to protect [it] from unbridled development" (Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven, 80 NY2d 500, 510 [1992]; see also ECL 57-0107 [10]). Petitioner sued Delea Farms in March 2020 to enjoin it from running what was, in petitioner's view, a commercial mulching operation that allegedly ran afoul of the farmland bill of rights and zoning regulations contained in the Code of the Town of Brookhaven (hereinafter the Town Code) as well as the terms of a conditional discharge entered following a 2017 guilty plea by Delea Farms in a code enforcement matter. Delea Farms reacted by requesting an informal opinion from respondent Commissioner of Agriculture and Markets as to whether its storage and sale of compost and mulch on the farm was "agricultural in nature" within the meaning of Agriculture and Markets Law § 308 (4). The Commissioner issued an opinion in July 2020 that the storage and sale of mulch and compost was an incidental agricultural use to the production and sale of sod at the farm.
Armed with that informal opinion, Delea Farms requested in January 2021 that the Commissioner formally determine whether petitioner's ongoing enforcement efforts "unreasonably restrict[ed] or regulat[ed] farm operations within agricultural districts" in violation of the Agriculture and Markets Law (Agriculture and Markets Law § 305-a [1] [a]; see Agriculture and Markets Law § 305-a [1] [b]). Following a review of operations at the farm, the Commissioner issued an interim decision in November 2021 in which he determined that it would, and invited petitioner to provide information on the issue of whether those otherwise protected farm activities posed a threat to public health or safety that would justify action by petitioner. Petitioner responded by questioning the Commissioner's findings and objecting that, more fundamentally, he lacked authority to render the determination because the Town Code played a role in implementing the Pine Barrens Act and the regional comprehensive [*2]land use plan developed under that law "to protect and preserve the hydrologic and ecologic integrity of the Central Pine Barrens" (ECL 57-0105). The Commissioner issued a determination in September 2022 in which he concluded that he had authority to act and found that, for the reasons set forth in the November 2021 interim decision, petitioner's zoning enforcement efforts were unreasonably restricting Delea Farms' farm operations. The Commissioner gave petitioner 30 days to confirm that it would no longer seek to do so.
Petitioner instead initiated this CPLR article 78 proceeding seeking to annul the September 2022 determination and, as set forth in a later amended petition, an implementing order issued by the Commissioner in November 2022 after petitioner declined to certify that it would comply with its obligations under the Agriculture and Markets Law. Petitioner named respondent Central Pine Barrens Joint Planning & Policy Commission (hereinafter the Pine Barrens Commission) — the public entity created by the Pine Barrens Act "to plan, manage and oversee land use within the Central Pine Barrens area of Long Island Pine Barrens Maritime reserve in the public interest for present and future generations" — as an additional party (ECL 57-0119 [1]; see ECL 57-0107 [8]; 57-0111 [8]). Following joinder of issue, Supreme Court issued a judgment in June 2023 in which it rejected the objections in point of law raised by respondents but dismissed the petition upon the merits. Supreme Court specifically determined, as is relevant here, that the Pine Barrens Act did not restrict the Commissioner's ability to act under Agriculture and Markets Law § 305-a and that the determinations at issue here were not arbitrary and capricious. Petitioner and the Pine Barrens Commission separately appeal.
At the outset, we do not agree with the Commissioner that the appeal of the Pine Barrens Commission must be dismissed. "[O]nly an 'aggrieved' party may appeal from an order or judgment and, if a party is not aggrieved, then this Court does not have jurisdiction to entertain the appeal" (Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d 1328, 1330 [3d Dept 2017], quoting CPLR 5511). The Commissioner suggests that the Pine Barrens Commission is not aggrieved here because it sought dismissal of the petition on ripeness grounds so that further proceedings could occur before it to assess whether Delea Farms' activities fell within its jurisdiction and oversight, and that the petition was, in fact, dismissed. The ultimate dismissal of the petition on the merits was in no way a success for the Pine Barrens Commission, however, as the claim that it had to review Delea Farms' activities was explicitly based upon the argument that its authority under the Pine Barrens Act superseded that of the Commissioner under the Agriculture and Markets Law to the extent that the two were incompatible.[FN1] Supreme Court disagreed with that claim and, as the Pine Barrens Commission [*3]was thereby "denied . . . [an] affirmative claim or substantial right," it may properly appeal (Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545 [1983]; see Matter of Feldman v Planning Bd. of Town of Rochester, 99 AD3d 1161, 1165 [3d Dept 2012]).
Turning to the merits, we affirm. Addressing the jurisdictional arguments of petitioner and the Pine Barrens Commission, we begin with a brief explanation of the statutes at issue. With regard to the Commissioner's authority, the NY Constitution sets forth "[t]he policy of the state" as "encourag[ing] the development and improvement of its agricultural lands for the production of food and other agricultural products" and ensuring "the protection of" those lands (NY Const, art XIV, § 4). In accordance with that policy, Agriculture and Markets Law article 25-AA was enacted in 1971 "upon a finding that many of the agricultural lands in New York state are in jeopardy of being lost for any agricultural purposes due to local land use regulations inhibiting farming, as well as various other deleterious side effects resulting from the extension of nonagricultural development into farm areas" (Matter of Ball v Town of Ballston, 173 AD3d 1304, 1307 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 903 [2019]; see Town of Lysander v Hafner, 96 NY2d 558, 563 [2001]). Among the provisions of article 25-AA is Agriculture and Markets Law § 305-a (1) (a), which "mandates that, when exercising their powers to regulate land use activities [in agricultural districts], local governments must do so in a manner consistent with the policy objectives of article 25-AA" (Town of Lysander v Hafner, 96 NY2d at 563; see Matter of Ball v Town of Ballston, 173 AD3d at 1307). The statute therefore bars local governments from "enact[ing] and administer[ing] comprehensive plans and local laws, ordinances, rules or regulations . . . [that] unreasonably restrict or regulate farm operations within agricultural districts in contravention of the purposes of [article 25-AA] unless it can be shown that the public health or safety is threatened" (Agriculture and Markets Law § 305-a [1] [a]; see also Town Law § 283-a [1]). It also empowers the Commissioner to render an opinion, upon request, "as to whether farm operations would be unreasonably restricted or regulated" by local government actions so as to violate the Agriculture and Markets Law (Agriculture and Markets Law § 305-a [1] [b]). The Commissioner is further authorized to order municipalities to comply with the Agriculture and Markets Law (see Agriculture and Markets Law § 36 [1]) and to "bring an action to enforce the [statutory] provisions" if needed (Agriculture and Markets Law § 305-a [1] [c]; see Matter of Village of Lacona v New York State Dept. of Agric. & Mkts., 51 AD3d 1319, 1321 [3d Dept 2008]). There is no dispute that Delea Farms is engaged in farm operations within an agricultural district to render these statutory provisions [*4]applicable and, on their face, they authorize the determinations at issue here.
The Pine Barrens Act was enacted in 1993, well after the relevant provisions of the Agriculture and Markets Law, and created the Pine Barrens Commission with the goal, among other things, of "prepar[ing] or caus[ing] to be prepared a draft comprehensive land use plan . . . for the Central Pine Barrens area" that would be submitted to the town boards of petitioner and other named municipalities (ECL 57-0121 [1]) and be ratified upon unanimous adoption by them (see ECL 57-0121 [12]). "[E]ach town board and village board with jurisdiction within the Central Pine Barrens area," including petitioner, would then be required to "adopt and amend as necessary land use and zoning regulations, by local law or ordinance, rule or regulation to conform their land use regulations to the land use plan" (ECL 57-0123 [1]). A land use plan was ratified and, in 1996, petitioner conformed the Town Code to the plan's terms by adopting chapter 85, article 37 governing zoning in the Central Pine Barrens area. The Pine Barrens Act provides that "the provisions of any other law, ordinance, rule or regulation to the contrary notwithstanding, no application for development within the Central Pine Barrens area shall be approved by any municipality or county or agency thereof or the commission, and no state approval, certificate, license, consent, permit, or financial assistance for the construction of any structure or the disturbance of any land within such area shall be granted, unless such approval or grant conforms to the provisions of" the land use plan unless a waiver is granted by the Pine Barrens Commission (ECL 57-0123 [3] [a]).
There is no doubt from the foregoing provisions that the Legislature enacted the Pine Barrens Act to regulate aspects of development and land use in the Central Pine Barrens. This decision does not lead to the further conclusion that the Commissioner has no authority to act there, however, as "the mere fact that the Legislature has enacted specific legislation in a particular field does not necessarily lead to the conclusion that broader agency regulation of the same field is foreclosed" (Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d 186, 193 [1988]; see Matter of Garcia v New York City Dept. of Health and Mental Hygiene, 31 NY3d 601, 620 [2018]). The opposite, in fact, is true here; the Commissioner's statutory authority predates the Pine Barrens Act and, as "[r]epeal or modification of legislation by implication is not favored in the law," the Pine Barrens Act will not be read as limiting that authority unless the statutory text or the legislative history of the act demonstrates "an express manifestation of intent by the Legislature" to do so (Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d at 195). Supreme Court determined, and we agree, that no such intent can be found in the Pine [*5]Barrens Act.
Petitioner and the Pine Barrens Commission suggest that such an intent can be found in ECL 57-0123 (3) (a), which provides that "no application for development within the Central Pine Barrens area shall be approved by any municipality or county or agency thereof or the commission, and no state approval, certificate, license, consent, permit, or financial assistance for the construction of any structure or the disturbance of any land within such area shall be granted, unless such approval or grant conforms to the provisions of" the land use plan ratified under the Pine Barrens Act. The Commissioner's determinations at issue here relate to farm operations, however, and the Pine Barrens Act both encourages agricultural development and explicitly excludes "the use of any land for the purpose of agriculture or horticulture" from the definition of development (ECL 57-0107 [13] [v]; see ECL 57-0121 [4] [d]; [6] [g]). The definition of "agriculture or horticulture" in the Pine Barrens Act varies somewhat from the definition of a "farm operation" in the Agriculture and Markets Law (compare ECL 57-0107 [14], with Agriculture and Markets Law § 301 [11]); however, that fact does not compel the conclusion that any farming activity at issue falling outside of the definition of "agriculture or horticulture" in the Pine Barrens Act necessarily constitutes development within the meaning of ECL 57-0123, and neither petitioner nor the Pine Barrens Commission persuasively argues otherwise.
Assuming, without deciding, that outside action relating to an agricultural use could nevertheless implicate ECL 57-0123 if it authorized construction of a structure or a disturbance of land within the Central Pine Barrens, an even larger problem for petitioner and the Pine Barrens Commission is that when a "statute describes the particular situations in which it is to apply, 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded' " (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208-209 [1976], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240; see Matter of Turdo v Dellicato Vineyards, 73 AD3d 143, 145-146 [3d Dept 2010]). ECL 57-0123 (3) (a) specifies that state agencies and municipalities are generally prohibited from approving a development within the Central Pine Barrens or otherwise authorizing "the construction of any structure or the disturbance of any land" where such would run afoul of the land use plan prepared under the Pine Barrens Act. The Commissioner here did neither and instead, at the request of Delea Farms, opined that "farm operations [were] unreasonably restricted or regulated" by the way in which petitioner was administering the Town Code against Delea Farms' preexisting sod and mulching operations and directed petitioner to cease that behavior going forward (Agriculture and Markets Law § 305-a [1] [b]). To put it differently, the Commissioner determined [*6]that petitioner was "seek[ing] to administer a zoning ordinance in a manner that is in conflict with the policy objectives of [Agriculture and Markets Law] article 25-AA," rather than approving any specific activity by Delea Farms that might violate the land use plan created under the Pine Barrens Act and implicate the provisions of ECL 57-0123 (3) (a) (Matter of Inter-Lakes Health, Inc. v Town of Ticonderoga Town Bd., 13 AD3d 846, 847 [3d Dept 2004]). Because such determinations directed at municipalities "were not included within the scope of [ECL 57-0123 (3) (a)], . . . the Legislature's failure to include them indicates that their exclusion was intended," and we therefore agree with Supreme Court that nothing in the Pine Barrens Act deprived the Commissioner of authority to act as he did here (Plath v New York State Olympic Regional Dev. Auth., 304 AD2d 885, 886 [3d Dept 2003]).[FN2]
Petitioner and the Pine Barrens Commission further suggest that restrictions imposed by the land use plan created under the Pine Barrens Act, as well as provisions of the Town Code intended to implement that plan, may somehow become part of the Pine Barrens Act and bar the Commissioner from acting. It suffices to say that, aside from the provisions of ECL 57-0123 that we have already found to be inapplicable, nothing in the Pine Barrens Act contemplates that either the plan or the Town Code could supplant otherwise applicable state law. To the dubious extent that either purports to do so upon their own initiative, they "constitute[ ] an illegal addendum to the statute which departs from and is inconsistent with the language of [the Pine Barrens Act] and the legislative intent expressed therein" (Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg, 78 NY2d 194, 203-204 [1991]; see e.g. Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 22 NY3d 606, 624 [2014]). We therefore agree with Supreme Court that the Commissioner retained his power under the Agriculture and Markets Law to take action against petitioner for enforcing the Town Code in a manner that improperly impaired agricultural operations.
We further agree with Supreme Court that the Commissioner's determinations were not arbitrary and capricious. Our review requires us to "ascertain whether there is a rational basis for the [administrative] action in question or whether it is arbitrary and capricious," and, if there is a rational basis in the record for the determination, it will be sustained even if a different result would have also been conceivable (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [internal quotation marks and citations omitted]; see Matter of Adirondack Wild: Friends of the Forest Preserve v New York State Adirondack Park Agency, 34 NY3d 184, 195 [2019]). As noted above, the Commissioner is authorized to assess whether farming operations within an agricultural district are being unreasonably restricted by a municipality's behavior and direct the municipality [*7]to cease such behavior unless it is justified by public health and safety concerns (see Agriculture and Markets Law § 305-a; Matter of Ball v Town of Ballston, 173 AD3d at 1307). Agriculture and Markets Law article 25-AA defines farming operations as including all "land and on-farm buildings, equipment . . . and practices" that "contribute to the production, preparation and marketing of crops . . . as a commercial enterprise," notably including "compost, mulch or other biomass crops" (Agriculture and Markets Law § 301 [11]). The Commissioner determined that Delea Farms was primarily operating the farm for sod production and harvesting, that it was not manufacturing or processing mulch at the farm and that the mulch and compost at the farm was either used on the farm itself or sold to customers who needed it to install the sod and nursery stock that was the farm's actual focus.
The Commissioner tasked a senior environmental analyst at the Agriculture Department to conduct a site inspection following Delea Farms' complaint, and the notes and photographs documenting the analyst's inspection, as well as her later affidavit, are in the record before us. Those materials reflect that the farm spans approximately 285 acres in the Central Pine Barrens and that the large majority of that acreage is devoted to producing sod and some vegetables. Delea Farms did store compost and mulch on about 10 acres of the farm and sold those materials to its customers. Having said that, the analyst described how, based upon the results of her site inspection, discussions between state officials and personnel at the farm, and consideration of the numerous submissions by the parties, it appeared that compost was made at the farm to assist in sod production and petitioner's suspicions of a "commercial mulching operation" were baseless because all of the mulch at the farm had been purchased elsewhere and transported there.[FN3] It further appeared that, to the limited extent that mulch and compost were sold to customers rather than being used for agricultural purposes at the farm itself, those sales constituted less than 5% of the farm's total and were generally made to customers who used them to install the sod and other nursery stock that was the farm's stock in trade. Moreover, as the Commissioner correctly noted, petitioner failed to demonstrate any specific threat to public health or safety that arose from the operations at the farm, and the belated efforts by the Pine Barrens Commission to show such a threat for the first time upon this appeal cannot be considered (see Matter of Featherstone v Franco, 95 NY2d 550, 554-555 [2000]). Thus, despite the existence of proof in the record that could arguably support a different result, "[g]iven [the foregoing] and other proof in the record and according deference to the Department's interpretation and application of Agriculture and Markets Law § 305-a," a rational basis supports the challenged determinations in all respects (Matter [*8]of Village of Lacona v New York State Dept. of Agric. & Mkts., 51 AD3d at 1321).
To the extent that they are properly before us, the remaining contentions of petitioner and the Pine Barrens Commission have been considered and rejected.
Clark, Reynolds Fitzgerald, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: As the Pine Barrens Commission did raise this argument before Supreme Court, we do not agree with the Commissioner's separate argument that the issue is unpreserved for our review.

Footnote 2: "[I]t is the duty of courts, if at all possible and consistent with the canons of statutory interpretation, to construe two separate statutes in harmony," and, as the Pine Barrens Act and the Agriculture and Markets Law do not clash here, we need not speculate as to whether the provisions of the Pine Barrens Act would control as "a special statute in irreconcilable conflict with a general statute covering the same subject matter" (National Org. for Women v Metropolitan Life Ins. Co., 131 AD2d 356, 358 [1st Dept 1987]), lv dismissed 70 NY2d 939 [1988]).

Footnote 3: The record also reflects that, contrary to petitioner's complaints, Delea Farms rarely, if ever, stored more than 3,000 cubic yards of mulch at the farm so as to potentially run afoul of the Town Code and a conditional discharge. Indeed, for all of petitioner's upset about the amount of compost and mulch available at the farm, the analyst pointed out that petitioner itself gives compost and mulch away to its residents at several town facilities, including one with a "significantly larger" operation than the farm's that was also located in the Central Pine Barrens.